IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number:  06-cv-01956-EWN-MJW

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                                    Plaintiff,

and

SABINITA BARRON,
MARCIA MANCHEGO,
and CHRISTINE NEWLAND,

                                    Intervenors,

v.


CORRECTIONS CORPORATION OF AMERICA, a Maryland corporation, d/b/a
CROWLEY COUNTY CORRECTIONAL FACILITY, and

DOMINION CORRECTIONAL SERVICES LLC, an Oklahoma corporation, d/b/a
CROWLEY COUNTY CORRECTIONAL FACILITY,

DOMINION CORRECTIONAL PROPERTIES, LLC, d/b/a CROWLEY COUNTY
CORRECTIONAL FACILITY, and,

DOMINION VENTURE GROUP, d/b/a
CROWLEY COUNTY CORRECTIONAL FACILITY,

                                    Defendants.

---

**CCA'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

---


I.    <u>CCA's Reply Concerning Undisputed Facts</u>

        CCA submits the following facts in reply to Plaintiffs' response to CCA's Statement of

Undisputed Facts:

A.    Successor Liability Claim

3.    The record Plaintiffs cite does not support their denial.  Nothing in the 1999 agreement cited establishes Crowley Correctional Services, LLC ("CCS"), had employees when it sold its interests in the CCCF to CCA in January 2003.  Plaintiffs' general reference to their "Statement of Additional Disputed Facts, *infra*, pp. 12-14, ¶ 15-30," is unavailing and does not comply with the court's call for "*specific reference* to material in the record supporting the denial."  Chief Judge Edward W. Nottingham's Civil Practice Standards ("CPS"), p. 11, ¶ 4 (emphasis in original).  First, not only do the cited pages contain no such paragraph numbers, they make no mention of CCS whatsoever.  Second, there is no section in Plaintiffs' Response to CCA's Motion for Summary Judgment [Dkt. 215-2] ("Response Brief"),  entitled "Statement of Additional Disputed Facts."  Third, there is a section entitled "Plaintiff EEOC and Plaintiff-Intervenor's Separate Statement of Facts," which on pages 47-51 contains ¶¶ 15-30, but of these 16 paragraphs, only six mention CCS and none cite to any evidence in the record that refutes CCA's contention that CCS had no employees when it joined in the CCCF sale.  Finally, Plaintiffs declare in their own factual statements, "CCS had no employees."  Plaintiffs' Response Brief p. 50, ¶ 26.  Thus, Plaintiffs have sent their readers on a wild goose chase for naught.

4.    The record Plaintiffs cite does not support their denial.  Plaintiffs provide no specific reference to the record to support their denial, but merely incorporate their response to ¶ 3, above.  CCA notes, that ¶ 4 in its brief contains a typographical error.  Dominion managed the CCCF from December 21, 2000 (not 2002), through January 17, 2003.  Plaintiffs agree that on

December 21, 2000, Dominion contracted to manage CCCF and that CCA began operating the prison on January 18, 2003.  Response Brief, p. 3, ¶ 7; p. 49, ¶ 25.

10.     Plaintiffs provide no reference to the record to support their denial.   In contravention to the court's CPS, p. 12, ¶ 7, they merely point to their legal argument.

17.     Although Plaintiffs admit CCA's Statement of Undisputed Fact ("SOF") ¶ 17, they misstate CCA's record citation.  CCA did not cite Ex. A-16, but Ex. A-18, which supports the statement.  Plaintiffs' denial that CCA lacked knowledge of Henderson's assault is beyond the scope of SOF 17.  Plaintiffs' statement that CCA was on notice of the assault is not supported by the Henderson testimony they cite.  Henderson testified she told Brent Crouse she had hurt her shoulder at the back gate, and that when he asked what happened, she told him she could not talk to him at that point.  Ex. B-6, p. 33, ll. 18-21.  Nothing in the record Plaintiffs cite indicates Henderson informed Crouse of the assault.

18-19.     Brent Crouse denies Plaintiffs' statement that he knew of Christine Newland's sexual harassment claim before CCA bought the CCCF.  Ex. A-2, p. 2, ¶ 6.

25.     Brent Crouse denies Plaintiffs' statement that he knew of Christine Newland's sexual harassment claim before CCA bought the CCCF.  Ex. A-2, p. 2, ¶ 6.  Plaintiffs' statement about a "status summary" is not supported by its reference to Ex. B-4.

26.     Brent Crouse denies Plaintiffs' statement that he knew of Christine Newland's sexual harassment claim before CCA bought the CCCF.  Ex. A-2, p. 2, ¶ 6.  Lucilla Gigliotti is not a class member or intervenor in this case.  Ex. A-21, p. 2.   Thus, Plaintiffs' reference to her EEOC charge does not refute SOF 26.  Plaintiffs' statement about a "status summary" is not supported by its reference to Ex. B-4.

B.    Pattern or Practice Claims

27.    Plaintiffs do not provide any citation to the record to support their denial.

28.    Plaintiffs do not provide any citation to the record to support their partial denial.

C.    CCA's Sexual Harassment and Retaliation Policy

34.    Plaintiffs admit only a portion of the stated facts, but do not deny the remaining facts or provide any citation to the record to support any such denial.

35.    Plaintiffs admit only a portion of the stated facts, but do not deny the remaining facts or provide any citation to the record to support any such denial.

37.    Plaintiffs reference only one person, Debra Salas, who claims she did not receive training on CCA's Policy 3-17 (sexual harassment policy).  As Salas worked only for Dominion and was never employed by CCA, it would not have been possible for Salas to receive training on any CCA policies, including Policy 3-17.  *See* Plaintiffs' Response to CCA's Statement of Undisputed Facts ("Response to SOF") 28.

39.    Other class members saw or received the "Warden's Daily Reminders" cards, including: Balbina Tavarez [Response to SOF 107]; Amanda Armstrong Marquez [Ex.A-26 at 24:10-17]; Emma Cordova [Ex. B-8 at 62:17-63:8]; Kathleen Robinson [Ex.A-33 at 23:12-24:2].[1]

40.    Balbina Tavarez "cannot remember" whether the sexual harassment poster was posted anywhere other than administration.  Ex. A-34 at 136:1-10.  Emma Cordova saw the poster "all over" at the prison.  Ex. B-8 at 62:4-16.

41.    Amanda Armstrong Marquez does not remember whether she saw the corporate

---

[1] To the extent additional deposition pages from any previously cited deposition are cited herein, they are attached hereto as supplemental pages to the prior deposition exhibit, using the same exhibit number CCA or Plaintiffs previously used for that deposition.

compliance manual, but states she may have seen it.  Ex. A-26 at 19:20-20:5.  Other class members recall seeing or receiving the corporate compliance manual, which contains a sexual harassment policy:  Balbina Tavarez [Ex. A-34 at 133:17-22]; Sabinita Barron [Ex. A-10 at 73:25-75:4]; Marcia Manchego [Ex. A-35 at 121:20-122:2].

D.    CCA's Enforcement of Policy 3-17

43.    Plaintiffs admit the claimed fact, but deny that all complaints are investigated based on one complaint that was not investigated.  From January 1, 2003, through December 2007, CCA conducted 29 sexual harassment investigations.  *See* Response to SOF 46.

44.    Plaintiffs admit the claimed fact, but deny that reports are always written based on one report that could not be located.

46.    Plaintiffs do not deny CCA conducted 29 harassment investigations from January 1, 2003, through December 2007, but deny that: (a) all allegations are investigated, based on one allegation that was not investigated and four allegations against Flores that are not contained in Ex. A7 at A7(A): or (b) reports are always written, based on one report that could not be located. *See* CCA's Reply Concerning Undisputed Facts ("Reply to SOF") 43 & 44.

47.    Plaintiffs do not deny CCA disciplined employees as a result of 15 of the investigations, but deny Exhibit A-7 is complete because one investigation was not done, four allegations against Flores are not contained in Ex. A7, at A7(A), and one report could not be located.  *See* Reply to SOF 43, 44, 46.

49.    Plaintiffs do not deny the remaining 14 investigations were unsubstantiated, but deny that all complaints were investigated based on one complaint that was not investigated and four allegations against Flores that are not contained in Ex. A7 at A7(A).  *See* Reply to SOF 43,

44, 46, 47.

52.     Plaintiffs do not deny CCA sent Marquez a letter explaining the investigation outcome or that Gonzales apologized to her.  *See also* CCA's Reply Brief in Support of Motion for Partial Summary Judgment ("Reply Brief"), Legal Argument, §IV.C.1.a (1) & (2).

53.     Plaintiffs do not deny the claimed fact.  Termination was the most extreme disciplinary action available to CCA and permanently removed the terminated employees from CCA's workplace, preventing them from engaging in any further conduct in the workplace.

E.     Class Member Amanda Armstrong (a.k.a. Marquez)

60 - 61.        Plaintiffs do not deny the claimed facts.  *See* Reply to SOF 52.

63.     The record Plaintiffs cite does not support the claimed fact.  Palomino never "propositioned" Marquez.  Marquez does not know what he thought or intended; she just made an assumption. Ex. A-26 at 47:17-48:2, 49:5-25.  *See also* Reply Brief § IV.C.1.a (3).

64.     The record Plaintiffs cite does not support the claimed fact.  Palomino never asked Marquez for a date or for sexual favors, and never engaged in any other actions or comments she believed or considered to be sexual harassment. Ex. A-26 at 49:8-25.  *See also* Reply to SOF 63.

67.     Plaintiffs cite no facts to support their denial, which is based on their argument that the stated fact is misleading.  Kastelic always treated Marquez coldly; his demeanor toward her did not change after he became he supervisor.  Ex. A-26 at 64:20-65:16; 61:17-18.

71.     The record Plaintiffs cite does not support the claimed fact.  Marquez did not talk again with the warden about Gonzales because she "just assumed it had been taken care of."  Ex. A-26 at 53:5-14.  Plaintiffs admit Gonzales never harassed her again.  Response to SOF 62.

F.    Class Member Venisha Lopez

75.    Plaintiffs do not deny the claimed fact, but dispute the stated reason for the written reprimand Lopez received.  Plaintiffs provide no citation to support the claimed fact that "Phyllis Candelaria falsely attributed this statement to Lopez."  Candelaria recommended that Lopez be fired (Ex. B-11 at 27:6-9), but after Lopez spoke to the warden, the warden reduced it to a written reprimand instead.  Ex. B-11 at 25:1-27:12, 101:3-12.  Lopez chose not to file a grievance.  Ex. B-11 at 23:23-24, 27:18-20.   Plaintiffs' citation to Ex. B-11 at 101:11-20 does not support the claimed fact it follows.   Lopez' belief CCA would not listen to her was unreasonable because, after she spoke with the warden, the warden reduced the recommended discipline to a written reprimand.  Ex. B-11 at 25:1-27:12, 101:3-24.  *See also* Reply Brief § IV.C.1.a(7).

76.    The record Plaintiffs cite by does not support the claimed fact that Lopez was "outraged."  Lopez did not respond to Flores and left the control room.  Ex. B-11 at 57: 4-7.

77.    The record Plaintiffs cite does not support the claimed fact.  Lopez could not recall any other incidents of sexual harassment that Flores engaged in toward her.  Ex. B-11 at 57:12-16.

78.    The record Plaintiffs cite does not support the claimed fact that Lopez "signaled" her objection; it states she pulled away when Flakes touched her hair.  Ex. B-11 at 58:13-21.

81.    Plaintiffs admit the stated fact.  The record Plaintiffs cite does not support the claimed fact she "signaled her objection to his conduct."  It states Lopez claims she pulled away from Bonner and told him she had a boyfriend.

82.    The record Plaintiffs cite does not support the claimed fact that Bonner

propositioned Lopez.  It states only that he once asked her for her phone number.  Ex. B-11 at 60:8-61:2.  CCA admits Plaintiffs' remaining claimed facts include all of Lopez' allegations against Bonner (Ex. B-11 at 60:8-62:21).  Lopez claims she was uncomfortable only about the incident that allegedly occurred inside Unit 5.  Ex. B-11 at 71:24-72:10.  Lopez understood it was CCA's policy not to tolerate sexual harassment, and that she should report any instances of sexual harassment to the warden, immediately.  Ex. B-11 at 33:12-18.  Lopez never reported any instances of sexual harassment against her.  Ex. B-11 at 33:19-23, 72:11-13.

83.     CCA's claimed fact is complete.  Lopez alleges Thiele tried to kiss her only one time, in the parking lot after her work shift.  Ex. A-30 at 63:18-66:14.  This occurred after the two had spoken about their respective sex lives and she had given him advice about what types of things women liked, including sexual things women liked.  Ex. A-30 at 82:7-83:22.

87.     Lopez testified, twice, that she never reported any complaints of sexual harassment to anyone at CCA.  Ex. B-11 at 33:15-23, 54:17-24.  Her statements to CCA's investigator were made in response to allegations of sexual harassment that had been made *against her* by Trujillo and corroborated by Patterson and Flakes.  Ex. B-11 at 48:8-51:23.

88.     Plaintiffs do not deny the claimed facts, but state Lopez disputes the reasons for her termination.

G.     Class Member Genevieve Luna

92.     Luna has no idea what Candelaria was thinking when he made the comments, "I want to take you home with me," and does not know why he made the comments.  Ex. A-31 at 64:23-65:8.  He never used the word sex, propositioned her for sex or said he wanted to take her home with him to have sex.  *Id.* at 61:1-62:16, 63:9-65:8.  She did not report the alleged

comments. *Id.* at 66:6-9.

93.    Plaintiffs have not specified which of Luna's allegations occurred while she worked at Dominion and which occurred while she worked at CCA. Most of the claimed facts referenced in the record cited by Plaintiffs occurred at Dominion, not CCA. *See* CCA's Response to Plaintiffs EEOC and Plaintiff-Intervenor's Separate Statement of Facts ("Response to PSOF") at 166-169, 171. The only incident of sexual harassment about which Luna wrote a report occurred at Dominion. Ex. A-31 at 41:24-42:5. For purposes of this motion, CCA is without sufficient knowledge or information to admit or deny incidents which allegedly occurred at Dominion. The record Plaintiffs cite does not support the claimed facts about Deaver. Luna cannot recall whether anything she wrote in the logbook had anything to do with allegations of sexual harassment. *Id.* at 150:20-153:18. She does not recall anyone at CCA ever behaving in any way or saying anything that indicated to her they did not want to hear her complaints about sexual harassment. *Id.* at 154:12-19.

94.    *See* Reply to SOF 92 &93.

I.    <u>Class Member Balbina Tavarez</u>

106.    All of the alleged conduct upon which Plaintiffs' denial is based occurred during that time Tavarez worked for Dominion. Ex. A-34 at 8:1-17:10, 29:8-30:14. For purposes of this motion, CCA is without sufficient knowledge or information to admit or deny incidents which allegedly occurred while she worked at Dominion.

109.    *See* Reply to SOF ¶ 53.

111.    Plaintiffs do not deny that CCA's stated reason for discharging Tavarez is that she was a member of the clique and refused to cooperate with the investigation. CCA denies

Plaintiffs' additional claimed facts, as Tavarez does not know of any complaints of sexual harassment or discrimination she made that CCA retaliated against her for making. Ex. A-34 at 171:12-23; *see also* Response to PSOF 114; Response Brief at § III.D.5 (admitting Tavarez's claims against CCA are all based on successor liability).

112.    *See* Reply to SOF ¶ 53.

114.    Plaintiffs admit Tavarez is not contending that any gender discrimination or sexual harassment occurred against her while she was employed by CCA. *See* Response Brief at § III.D.5.

J.    <u>Intervenor Marcia Manchego</u>

122.    Plaintiffs admit the claimed facts.  CCA does not dispute that Manchego has denied she wrote the letter.  CCA also agrees that the facts in each case differ.  *See* Response to PSOF 32-42.

123.    Plaintiffs admit the claimed facts.  CCA is without sufficient knowledge or information to admit or deny whether Manchego provided personal information about her family to other employees.  CCA denies Plaintiffs' contention that the letter did not contain confidential information about CCCF, as it expressly references CCCF was expecting "another batch" of inmates from Wyoming.  *See* Response to SOF 146.

147.    Plaintiffs admit the letter is signed "MM," Manchego's initials, and that it contains her home address.  Crouse understood the "Merlinda Gonzales" return address to be the address the prisoner was to use as *his* return address---rather than his prison address---on the outside of any return letter he sent to Manchego, so others would not see that Manchego was receiving correspondence from a prisoner.   Ex. B-12 at 369:13-21.   *See also* Reply Brief § IV.C.1.a(10).

158.    *See* Reply Brief § IV.C.1.a(11).

K.    Intervenor Christine Newland

170.    Plaintiffs do not deny the claimed facts or state any facts support a denial.

171.    Plaintiffs admit Newland turned in her handcuffs, keys, and chits and left her uniform shirt and tie, badge, and SCO strips on the counter when she left.  Ex. A-8 at 305:2-23, A-36 74:14-77:11.  Although Newland denies telling Flores she had quit, she has no reason to think he had any grudges against her.  Ex. A-8 at 306:12-15.  *See* Response to SOF 172.

177.    CCA does not dispute Newland submitted a one page, typewritten sheet to the EEOC on or about March 2, 2004.  Ex.A-22, p. 4.

178.    *See* Reply to SOF 177.

II.    CCA's Response to EEOC and Plaintiff-Intervenor's Separate Statement of Facts

A.    Successor Liability

32-42.  The claimed facts do not pertain to successor liability.  CCA admits the facts in each case of improper contact with an inmate vary and that the other cases Plaintiffs cite demonstrate CCA takes violations of Policy 3-3 seriously.  *See* Reply Brief § III.C.1.a(28). Plaintiffs admit the letter signed "MM" contained personal information about Manchego and mentioned the prison was expecting prisoners from Wyoming.  Response to SOF 146, 147.  The latter is confidential prison information, the disclosure of which to an inmate violates Policy 3-3 and jeopardizes prison security.

B.    Pattern or Practice

**Darlene Jean Alvord**

101-105.    For purposes of this summary judgment motion, CCA is without sufficient knowledge or information to admit of deny the claimed facts, as CCA never employed Alvord. Response to SOF 28.  Alvord's allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Amanda Armstrong Marquez**

106.    Admit (except her start date was 8/10/06, not 8/9/06).

107.    Admit.

108.    Admit.

109.    Admit that she made this allegation against Gonzales.

110.    Admit that she made this allegation against Gonzales.

111.    Admit.

112.    Admit that she was interviewed about her sexual harassment allegations against Gonzales.  Deny Candelaria interviewed her.  Marquez testified:  "I *don't remember who *was* there* [when I was interviewed], but I'm pretty sure the warden *was there*, Tina Fraker, Candelaria and Destiny Filbert."  Ex. A-26 at 37:3-6.

113.    Admit.

114.    Admit.

115.    Deny.  *See* Reply to SOF 63-64.

116.    Admit Marquez claims she saw Baylor smack Montoya on the butt.  Deny he "commented on women he liked," as that misstates the record Plaintiffs cite; he commented a

coworker was "very good looking."  Ex. A-26 at 77:17-78:4.  Marquez did not report it.  *Id.* at 78:5-14.  Deny allegations about Baylor and pornographic magazine, as the record cited does not support that he took the inmate's magazine "for his own pleasure, reading it while on duty."  Rather, the record shows Baylor took the inmate's pornographic magazine as part of a cell shake-down and, after checking with the sergeant, was told to return it to the inmate.  *Id.* at 78:15-79:16.  Marquez does not know whether Baylor returned it.  *Id.* at 79:17-24.  She cannot recall anything Baylor did when he was looking at the magazine that she found offensive.  *Id.* at 79:25-80:9.  She did not report the incident.  *Id.* at 80:10-12.

117.    Admit Marquez received one PSN and one corrective counseling form from Kastelic about improper call-off and that she filed a grievance objecting she should not have been given both forms.  Deny Kastelic retaliated against her or any connection between the forms and her sexual harassment allegations against Gonzales.   At the time the forms were completed and filed, she had already resigned and accepted another job at CDOC where she would earn $1,300 more per month.  Ex. A-26 at 64:9-12, 60:22-61:2, 51:19-52:3.  Her only reasons for believing Kastelic retaliated against her for having filed the sexual harassment complaint against Gonzales are that he [Kastelic] "always treated [her] sort of coldly," and he did not allow her to leave early one day, but then allowed another female officer to leave early another day; she does not know all the work circumstances relating to the other officer.  *Id.* at 61:8-63:6.  *See also* Reply to SOF 67.

118.    Deny.  The record Plaintiffs cite does not support the claimed fact that CCA failed to keep her complaint against Gonzales confidential.  *See also* Reply Brief § IV.C.1.a(4)

119.    Deny.    *See* CCA's Response to EEOC and Plaintiff-Intervenor's Separate Statement pf facts ("Response to PSOF") 116-118.

**Caroline Baylor**

120-125.    For purposes of this summary judgment motion, CCA is without sufficient knowledge or belief to admit of deny the claimed facts, as CCA never employed Baylor. Plaintiff's Response to SOF 28.  Baylor's allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Emma Cordova**

*126-149.    CCA is not moving for partial summary judgment as to Cordova's claims.* [2]

126.    Admit.

127.    Deny.  Plaintiffs cite no facts to support the claimed fact.

128.    Admit these are her allegations.

129.    Admit the first sentence contains her allegations.  Cordova does not know whether any of the women she told to go to the warden with their complaints ever did so. Ex. B-8 at 118:14-122:6.  CCA denies Cordova knew why her paperwork was being scrutinized. She admits she was the newest and least experienced lieutenant.  Ex. B-8 at 88:14-20, 90:18-24, 92:9-12.  *See* Reply Brief § IV.C.1.a(12).

130.    Deny.  Cordova has no personal knowledge of Larkin's claimed discussions with the warden or security chief, and no personal knowledge about why Larkin was reassigned.  Ex. B-8 at 69:6-72:8, 118:14-122:6. *See* Response to PSOF 129; Reply Brief § IV.C.1.a(13).

131.    Deny.  *See* Response to PSOF 129.

_____

[2] For CCA class members as to whom CCA is not seeking summary judgment,  CCA has corrected significant factual errors in their allegations but, for purposes of this motion only, has not otherwise disputed their allegations.

132.    Admit these are her allegations.  *See* Reply Brief § IV.C.1.a(14).

133-143.    Admit these are her allegations.

144.    Admit these are her allegations, except the second sentence misstates her testimony.  The cited testimony refers only to comments Baca made to Cordova.  Deny she knew whether any action had been taken against him.  Ex. B-8 at 149:25-150:4.

145.    Admit the first sentence.  Deny the second sentence as it is not supported by the record cited by Plaintiffs, which states only that she decided to stay because "tons of female staff members" asked her to stay.  Admit the remaining two sentences are her allegations.  However, Cordova resigned to accept other employment, but then changed her mind.  Ex. B-8 at 151:22-25.  When she advised Warden Miller she had changed her mind, he told her she could definitely stay.  Ex. B-8 at 154:19-155:11.  When she resigned, she made no complaints about sexual harassment. Ex. B-8 at 153:17-20.  When she told the warden she had changed her mind, she did not tell him anything about complaints of sexual harassment or discrimination.  Ex. B-8 at 155:5-9.

146-147.    Admit these are her allegations.

148.    Admit she resigned voluntarily.  Ex. B-8 at 162:20-163:23.  She did not tell CCA she was quitting due to sexual harassment or discrimination.  Ex. B-8 at 164:10-165:6.  She told CCA she was leaving due to family issues.  Ex. B-8 at 165:15-166:6, 166:24-167:12.  Plaintiffs' cites do not support the claimed fact Cordova had "no other choice" but to quit or that she was "forced" to take a lower paying job.  She could have reported her complaints to the warden or human resources.

149.    Admit these are her allegations.  *See* Reply Brief § IV.C.1.a(15).

**Pam Henderson**

155-161.    For purposes of this summary judgment motion, CCA is without sufficient knowledge or information to admit or deny the claimed facts, as CCA never employed Henderson.  Plaintiff's Response to SOF 29.  Henderson's allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Genevieve Luna**

162.    Admit.

163.    Deny only to the extent Luna applied for sergeant two times while she worked at Dominion and one time while she worked at CCA.

164.    Admit.

165.    Deny.  *See* Reply to SOF 93 & 94.

166-169.    All these allegations relate to events that allegedly occurred while Luna worked at Dominion.  Ex. A-31 at 60:3-16.  CCA is without knowledge or belief to admit or deny incidents which allegedly occurred while Luna worked at Dominion.

170.    Deny.  *See* Reply to SOF 92.

171.    All claimed facts relate to events that allegedly occurred while Luna worked at Dominion.  Ex. B-14 at 134:10-21.  CCA is without knowledge or belief to admit or deny incidents which allegedly occurred while Luna worked at Dominion.

172.    Admit Luna gave this testimony.  *See* Reply Brief § IV.C.1.a(5).

173.    Deny.    Plaintiffs have inaccurately recited the testimony.    Luna's alleged emotional distress and her allegation that it caused her to obtain counseling, for a time period of

three months, occurred before she worked at Dominion.  Ex. B-14 at 88:23-89:11, 89:20-90:2.
*See* Reply Brief § IV.C.1.a(6).

**Venisha Lopez**

174.    Admit.

175.    Admit.

176.    Admit these are her allegations.  *See* SOF and Reply to SOF 76-77.

177.    Admit these are her allegations.  *See* SOF and Reply to SOF 78-80.

178.    Admit these are her allegations. *See* SOF and Reply to SOF 81-82.

179.    Admit these are her allegations.  *See* SOF and Reply to SOF 83.

180.    Admit these are her allegations.   *See* SOF and Reply to SOF 85.   Officer
Patterson's comments were made in response to her rubbing her shoulders and saying they were
achy.  Ex. B-11 at 69:1-14.

181.    Deny.   Plaintiffs provide no record citation to support the first statement.
Bonner's alleged comment in Unit 5 is the only incident that allegedly made Lopez feel
uncomfortable.  *See* SOF and Reply to SOF 81-82 and 87.  Plaintiffs' record citations do not
support the claimed fact that Lopez believed it was dangerous for her to work in the prison
environment; they state she was made uncomfortable by Bonner's comment in Unit 5.  Ex. B-11
at 71:24-72:10.

182.    Deny.  Plaintiffs provide no record citation to support the first statement.  CCA
admits Lopez made the allegation contained in the second sentence.  *See* Reply Brief §
IV.C.1.a(8).

183.    Admit these are her allegations.  *See* SOF and Reply to SOF 75.

184.    Admit these are her allegations.  *See* SOF and Reply to SOF 80-88.

185.    Admit these are her allegations.  *See* Reply Brief § IV.C.1.a(7).

186.    *See* Response to PSOF 184.

187.    Admit these are her stated desires.  *See* Reply Brief § IV.C.1.a(9).

**Lisa Marie Maize**

*188-198.        CCA is not moving for partial summary judgment as to Maize's claims.*

188.    Admit as to the time of her employment with CCA.  CCA lacks sufficient knowledge or belief to admit or deny the claimed facts as to her employment at Dominion.

189.    Maize provides only two instances of people allegedly ostracized.  Maize's statement about Sgt. Alyss Smith being ostracized related to the time Maize worked at Dominion, not CCA, as no Alyss Smith ever worked for CCA.  Ex. A-38 at p. 19.  Maize never heard Smith complain about feeling ostracized or ignored.  Ex. B-48 at 54:15-55:5.  Maize's statement about Newland occurred while Maize worked for Dominion as it related to Newland's allegations against Rutledge.  Ex. B-48 at 55:24-59:25.  Rutledge never worked for CCA.  Ex. A-16; Ex. A-38 at p. 18.  *See* Reply Brief § IV.C.1.a(16).

190.    Deny.  Maize states only that she *may* have reported sexual harassment to Flores and does not recall any specifics about what she may have reported.  Ex. B-48 at 72:11-74:2. *See* Reply Brief § IV.C.1.a(17).

191.    Deny.  The officer about whom Maize complained was fired.  Ex. B-48 at 79:14-80:3.  *See* Response to PSOF 190.

192.    Admit these are her allegations; however, her allegations about Luna occurred while she worked at Dominion, not CCA.  Ex. B-48 at 90:1-16.

193.    Admit these are her allegations.

194.    Admit these are her allegations.

195.    Admit the first clause of the sentence is one of her allegations, but *see* Response to PSOF 197-198.  Deny the second clause of the sentence as the record Plaintiffs cite does not support the claimed fact.  *See* Reply Brief § III.C.1.a(18).

196.    Admit these are her allegations.  *See* Reply Brief § IV.C.1.a(18).

197.    Deny.  Plaintiffs provide no record citations for the first sentence.  Candelaria denies the allegations attributed to her by Maize.  Ex. A-39 (Declaration of Phyllis Candelaria) at ¶¶ 17-18.

198.    Deny.  Maize and Candelaria were friends outside of work and discussed their private romantic lives, which Maize described as: "Women talk.  I mean, it's nothing bad---we hung outside of work as well."  Ex. B-48 at 129:14-23.

**Janelle Marquez**

199-208.    For purposes of this summary judgment motion, CCA is without sufficient knowledge or belief to admit of deny the claimed facts, as CCA never employed Marquez.  Plaintiff's Response to SOF 28.  Marquez' allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Sunni Miranda O'Maley**

209-211.    For purposes of this summary judgment motion, CCA is without sufficient knowledge or belief to admit or deny the claimed facts, as CCA never employed O'Maley.  Plaintiff's Response to SOF 28.  Her allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Pam Pearce**

*212-218.        CCA is not moving for partial summary judgment as to Pearce's claims.*

212.    Deny.  Plaintiffs' cites do not support the claimed fact.  She testified the EEO policy (not the sexual harassment policy) was kept in medical, and states she read the EEO policy but did not receive a copy of it.  Ex. B-51 at 170:17-171:2.  She did receive a copy of the sexual harassment policy and read it.  *Id.* at 171:3-21.

213.    Admit these are her allegations.

214.    Pearce's allegations about Rutledge relate to the time she worked for Dominion, not CCA, as Rutledge never worked for CCA.  Ex. B-51 at 99:17-104:2; Ex. A-16.

215.    Deny.  Pearce could not recall being aware of CCA's corporate compliance manual while she worked there, but does remember seeing it after she left her employment.  Ex. B-51 at 176:14-21.

216.    Deny.  Pearce testified only that she *thought* Brizendine was having sexual relations with various other employees.  Ex. B-51 at 15:7-29:20, 33:14-22, 34:7-38:21, 52:23-58:9, 60:17-63:16.  *See* Reply Brief § IV.C.1.a(19).

217.    Admit Pearce alleges a connection between her termination and her comments to Brizendine, but *see* Ex. B-51 at 64:5-66:13.  *See* Reply Brief § IV.C.1.a(20).

218.    Admit these are her allegations.

**Shirley Yvonne Richardson**

219-224.        For purposes of this summary judgment motion, CCA is without sufficient knowledge or belief to admit of deny the claimed facts, as CCA never employed Richardson.

Plaintiff's Response to SOF 28.  Her allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Kathleen Robinson**

225.    Admit the first and last sentences.  Deny the second sentence (*See* Response to SOF 103).

226.    Admit.

227.    Deny first partial sentence as the sentence is incomplete.[3]    Admit she alleges a prison protocol that should be followed to assist her in delivering medications.  Admit the remainder of the paragraph is her allegations, but see Ex. B-20 at 17:23-18:15.  *See also* Response to SOF 97; Reply to SOF 97; Reply Brief § B.1.a(21).

228.    Admit these are her allegations, except deny that she had any personal knowledge of what the director of nursing was thinking or whether the director of nursing was surprised.  *See* Reply Brief § B.1.a(22).  After she complained, she never saw the male officer she complained about again.  Response to SOF 99.

229.    Admit these are her allegations, but deny the fourth sentence as Robinson never again saw the officer after she complained to the director of nursing.  As other officers present on subsequent days had not "instigated this type of behavior," this could not have been their reason for not attempting to stop the inmates' comments.  Robinson never complained to anyone about the inmates' comments as such comments by inmates were typical, based on her sixteen years of experience working in prisons.  Ex. B-20 at 44:6-45:4

230.    Admit these are her allegations.  *See* Reply Brief § IV.C.1.a(23).

---

[3] This fact statement, as well as many other fact statements made by Plaintiffs, does not comply with this Court's rules.  CPS, pp. 11-12, ¶ 5, 7.

231.    Admit these are her allegations, but *see* Response to SOF 103 and Response to PSOF 228.

232.    Admit these are her allegations, but *see* Reply Brief at § IV.C.1.a(24).

**Debra Salas**

233-236.    For purposes of this summary judgment motion, CCA is without sufficient knowledge or belief to admit of deny the stated facts, as CCA never employed Salas. Plaintiff's Response to SOF 28. Her allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Delores Salazar**

237-254.    For purposes of this summary judgment motion, CCA is without sufficient knowledge or belief to admit of deny the stated facts, as CCA never employed Salazar. Plaintiff's Response to SOF 28. Her allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Valori Ruth Segura**

255-261.    For purposes of this summary judgment motion, CCA is without sufficient knowledge or belief to admit of deny the stated facts, as CCA never employed Segura. Plaintiff's Response to SOF 28. Her allegations relate to the time period she was employed at the prison by one or more other employers, including Dominion.

**Balbina Tavarez**

262.    Admit Tavarez began her employment with CCA as a captain on January 18, 2003. Tavarez does not claim CCA retaliated against her or engaged in sexual harassment against her. *See* Response Brief at § III.D.5. The claimed facts relate to her employment at

Dominion.  Her only claim against CCA is one of successor liability for Dominion's alleged sexual harassment against her.  For summary judgment purposes, CCA lacks sufficient knowledge or information to admit or deny Tavarez's allegations that pertain to her employment at Dominion.

263-268.       *See* Response to PSOF 262.

269.     Deny.  This claimed fact is contradicted by Response Brief at § III.D.5.

**Catheryn Watkins**

*270-280.       CCA is not moving for partial summary judgment as to Watkins' claims.*

270.     Admit.

271.     Deny.  Plaintiffs provide no record citation to support the claimed fact.

272.     Deny.  The record cited does not support the claimed facts that Watkins attempted to complain about the conduct, was retaliated against, or quit her job when she was told she would be terminated.

273.     Deny the first sentence, as Plaintiffs provide no record citation to support the claimed fact.  Admit the second and third sentences are her allegations, but *see* Reply Brief § IV.C.1.a(25).

274.     Deny the first sentence, as Plaintiffs provide no record citation to support it.  Admit the second sentence only as to her allegation about a single comment she alleges Flores made; the remainder is not supported by the record Plaintiffs cite.

275.     Deny.  Plaintiffs provide no record citation to support the claimed facts in the first and third sentences.  The record Plaintiffs cite by for the second sentence does not support the claimed fact that Blanco was "stalking her."  Rather, she had dated him and, after she broke up

with him, he continued to call her for several days, asking why she wasn't answering his calls. Ex. B-13 at 30:12-33:25. In response to her complaint about Blanco, Selman put in a no contact order, which was to her satisfaction and, after that, no harassment occurred. *Id*. at 36:14-39:22.

276. Deny the first sentence, as the record Plaintiffs cite does not support the claimed fact that Watkins was forced to give Flores oral sex. Admit the second sentence. Deny the third sentence, as the record Plaintiffs cite does not support the claimed fact that Flores told her to perform oral sex on him.

277. Deny the first sentence as the record Plaintiffs cite does not support the claimed fact that Flores sexually assaulted Watkins. Admit the second sentence is one of her allegations. Deny the third sentence, as the record Plaintiffs cite does not support it.

278. Admit the first sentence is one of her allegations. Deny the second sentence, as the record Plaintiffs cite only supports the claimed fact she was hospitalized in March 2005.

279. Admit the record cited supports that Selman told her he was going to recommend her for termination and she thought she would not be able to get another job if she got fired.

280. Deny. The record Plaintiffs cite does not support the claimed fact that Watkins complained to Selman that Flores had sexually assaulted her; the record cited states only that she told Selman that Flores called her and that she didn't tell Selman everything.

**Policy 3-17**

281. Deny to the extent the Policy, at § 3-17.5(A), states only the procedures CCA has set in place to address allegations sexual harassment; it does not use the word "require."

282. Admit.

283.    Admit Policy 3-3 does not cover sexual harassment among employees; it covers improper contacts with inmates, inappropriate sharing of confidential information with inmates, and failure to adhere to safety and security standards. Ex. A-7 at Ex. A-7B (Policy 3-3, Attachment B) at Standards, ¶¶ 2, 4 & 6.

284.    Admit.

**Training on Policy 3-17**

285.    Deny.  The record Plaintiffs cite does not support the claimed fact.  Rutledge never worked for CCA.  Ex. A-16.  *See* § IV.C.1.a(26).  Candelaria testified only that she knew Title VII describes what sexual harassment is, not that she understood it violated federal law. Ex. B-59 at 28:1-2.  Crouse testified only that he knew Title VII is the federal law that prohibits employment discrimination (not sexual harassment).  Ex. B-9 at 85:5-7.  Flores testified that he understood harassment in the workplace and sexual harassment were violations of federal law (with no reference to Title VII).  Ex. B-17 at 14:20-23.

286.    Admit.

287.    Deny.  *See* Response to PSOF 291 & 303.

288.    Deny. Selman described the investigation process he uses to conduct sexual harassment and other investigations, which includes interviewing witnesses, documenting evidence and completing a written report at the close of the process.  Ex. B-19 at 25:5-31:8.

289.    Deny the first sentence, as the record Plaintiffs cite does not support the claimed fact.  He had no "specific training" on how to conduct claims of sexual harassment, but described his general training in investigations.  Deny the second sentence, as the record Plaintiffs cite does

not support the claimed fact that his sexual harassment training at CCCF was the "only" sexual harassment training he had.

290.    Admit.

291.    Admit.  Candelaria received orientation and annual training at Dominion and at CCA on sexual harassment and has taught the sexual harassment course for many years.   Ex. B-59 at 25:23-26:6; Exhibit A-39 at ¶¶ 2-3.   The 40-hour training class she attended in Texas after she became employed by CCA was a "Train the Trainer" class.  Ex. A-39 at ¶ 3; Ex. B-59 at 26:11-27:25.

292.    Admit.

293.    Admit she does not do training on CCA's equal employment opportunity policy, as training on that policy is done by human resources.  Ex. B-59 at 22:21-23:1; Ex. A-39 at ¶ 5. However, she does the training on CCA's sexual harassment policy.  Ex. A-39 at ¶ 5.

294.    Denied.  Candelaria was asked whether class members ever ask her questions about the policy or the PowerPoint presentation and whether she has been able to answer those questions; her response to both questions was, "Yes."  Ex. B-59 at 52:1-9.  She did not claim to be able to answer *all* questions about the policy or the PowerPoints.  If a question is ever asked to which she does not know the answer, she contacts corporate human resources to find out the appropriate answer or response.  Ex. A-39 at ¶ 6.  Candelaria did not say that she must be told something is unwelcome before she considers anything sexual harassment.  Rather, Candelaria was asked what sorts of questions people asked at the training sessions and gave an example of a question about flirting, explaining that flirting would be sexual harassment if it is unwelcome. Ex. B-59 at 52:10-19.

295-297.    Admit.

298.    Admit Candelaria has no additional college education.

299.    Admit.  Rather than a written test, Candelaria does role-playing exercises.  When asked.  "Tell me about a role-play that you do," Candelaria gave an example of a role-playing exercise about rumors.  B-59 at 62:2-25.

300.    Denied.  *See* Response to PSOF 299.

301.    Admit.  She was employed at CCCF by CCA commencing January 18, 2003, and previously worked for Dominion.

302.    Admit.  Candelaria has had no involvement in this litigation other than being deposed.  Ex. A-39 at ¶ 7.  Her job duties do not include handling litigation matters for CCA.  *Id.*

303.    Denied.  Candelaria received orientation and in-service training on sexual harassment, both at Dominion and CCA, prior to the 40-hour "Train the Trainer" class she completed through CCA in October 2004.  Ex. B-59 at 23:3-27:25; Ex. A-39 at ¶ 3.

304.    Admit, but see Response to PSOF 305.

305.    Deny.  The record Plaintiffs cite does not support the claimed fact. It supports only that Candelaria was the only person who came to Warden Crouse's mind at the time of his deposition who did sexual harassment training while he was the warden; he "did not take any steps to make sure whether *other* people were qualified to do sexual harassment training;" and, unlike use of force, which requires a special certification to be able to teach it, he did know of any certificate or other type of documentation required to be qualified to do sexual harassment training.  Ex. B-9 at 89:9-90:13.

306.    *See* Response to PSOF 305.

307.    Deny.  The record Plaintiffs cite does not support the claimed fact.  He simply responded "No," to the question:  "When you were warden, did you ever cause or know your subordinate managers to undergo any type of sexual harassment training, other than that training provided in the academy or in the annual inservices?"  *See also* Response to PSOF 308.

308.    Deny.  He recalled that a sexual harassment training session occurred "where the trainees were just supervisors.,"  Ex. B-9 at 86:3-21.  He was trained on the sexual harassment policy annually.  *Id*. at 85:8-20.

309.    *See* Response to PSOF 307-308.

310.    Deny.   The record Plaintiffs cite does not support the claimed facts.  In response to hypothetical questions asking if a lieutenant fails to report an allegation of sexual harassment to a higher level, would that lieutenant have violated the sexual harassment policy, Candelaria responded that she could not answer because she did not know the specifics of what was reported to the lieutenant.  Ex. B-59 at 58:6-59:20.  *See also* Ex. A-39 at ¶¶ 9-13; Reply Brief § III.D.1.b.

311.    Deny.  The record Plaintiffs cite does not support the claimed facts.  Candelaria was first asked, over objection:  "If you didn't report it [sexual jokes you heard every day at work for a year], Ms. Candelaria, do you think you would have experienced sexual harassment at work."  She responded, "If I felt harassed, yes."  Ex. B-59 at 55:8-21.  She was then asked, over objection:  "But if you didn't report it," to which she responded, "If I felt harassed, I would report it."  *Id*. at 55:22-24.  Then, she was asked another hypothetical question, over objection, about whether, in her opinion, she would have been sexually harassed if she felt offended but did not report it, and was told she could answer only yes or no.  She answered, "No."  *Id*. at 55:25-56:9.  As Candelaria knew she would report anything that happened to her that she believed to be

sexual harassment; she knew it could not be sexual harassment if she chose not to report it. Reply Brief § III.D.1.b.

312.    Deny.  The record Plaintiffs cite does not support the claimed facts.  Candelaria was first asked, over objection: "If a woman hears a sexual joke once a day while she works at CCA, and she's offended by it and she's worked there for a year, do you think she's endured sexual harassment?"  She responded, "If she reports it, she is," or "If someone else there reports it, because it could be anybody else standing there that could report it."  Ex. B-59 at 54:8-20. She was then asked, over objection: "But if it's never reported, that this woman experiences hearing sexual jokes every day for a year that she works at CCA, did CCA violate the law." *Id.* at 54:21-55:6.  Candelaria responded she could not make that decision and did not have an opinion about it. *Id.* at 55:7. Ex. A-39 at ¶¶ 10-14; Reply Brief § III.D.1.b.

313.    Deny.  The record Plaintiffs cite does not support the claimed facts.  Candelaria was asked, over objection, a series of hypothetical questions about whether certain statements or acts by one employee toward another employee might constitute sexual harassment under CCA's sexual harassment policy, to which she responded that if someone is offended, it would violate the policy.  Ex. B-59 at 35:15-36:20.  Candelaria does not investigate sexual harassment allegations and does not determine whether specific allegations of sexual harassment are ultimately substantiated or unsubstantiated.  Ex. A-39 at ¶¶ 12-15; Reply Brief § III.D.1.b.

314.    Deny.  The record Plaintiffs cite does not support the claimed facts.  She testified, over objection, that a sexual joke could be sexual harassment if it was unwelcome, and that if someone told her a joke that she found unwelcome, or thought was inappropriate, it could be

construed as sexual harassment and that they would know she considered it unwelcome because she would tell them so.  Ex. B-56 at 172:7-174:21.  *See also* Reply Brief § III.D1.b.

315.    Admit.  However, Plaintiffs admit that she read and understood CCA's sexual harassment policy.  Response to SOF 91.

316.    Admit this is her testimony.

317.    Deny.  The record Plaintiffs cite does not support the claimed facts. The cited testimony states she does not recall any specific training in connection with the daily reminder cards.  *See also* Reply to SOF 39.

318.    CCA is without sufficient knowledge or belief to admit of deny the claimed fact, as CCA never employed Alvord and, therefore, was never in a position to train her.  Response to SOF 28.

319.    Admit.

320.    CCA is without sufficient knowledge or belief to admit of deny the claimed fact, as CCA never employed Richardson and, therefore, was never in a position to train her. Response to SOF 28.

321.    Deny.  She received a copy of the sexual harassment policy, read it, understood it, and had an opportunity to ask questions about it, but "had to turn it back in."  Ex. B-13 at 72:6-74:7.

**Enforcement of Policy 3-17**

322.    Admit Warden Crouse recalled a female officer who complained about a male sergeant who was viewing inmate pornography in the control room, and that the sergeant was terminated.  Ex. B-9 at 101:16-102:18.  The exhibits Plaintiffs cite do not support the claimed

fact that the incident to which Crouse was referring is not contained therein, as the exhibits do not contain sufficient details to make that determination.

323.    Deny, except the cited record states that, after receiving a verbal complaint, Selman tries to get the complaint in writing.  The record Plaintiffs cite also pertains to CCA's grievance procedure for employees to challenge employment-related decisions with which they disagree, which does require a written form.  Ex. B-19 at 27:19-32:17.

324.    Admit he viewed her complaint as serious, but deny the remainder because the record Plaintiffs cite does not support it.  The cited record states Selman did not recall following up on Watkins' complaint personally, after she had left her employment; he recalls that others were asked to try to reach her; he recalls that no one was able to reach her; and he recalls having made an initial report (Ex. B-29) on the matter.

325.    Admit Selman said the warden asked him to keep the paperwork relating to Watkins' claims and that he did not pursue the matter further.  The remaining claimed facts are not supported by the record Plaintiffs cite (*see* Response to PSOF 324).

326.    Deny.  The record citation to "Id." is unclear.  Neither the deposition testimony nor the exhibit Plaintiffs cite in support of the preceding fact paragraph supports the claimed fact.

327.    Admit.

328.    Deny the first sentence, as he located his initial report after his deposition (Ex. B-29).  Admit the second sentence.  Deny the third sentence as Plaintiffs provide no record citation to support it.

329-329a.    Deny.  The record cited by Plaintiffs does not support the claimed facts. Candelaria was asked, over objection, a series of hypothetical questions about whether she would

need to report it if another employee told her they had been told sexual jokes and were offended. She responded she would need to report it if it was unwelcome, if they were offended, or they gave her mixed signals by telling her it made them uncomfortable but they were not offended. Ex. B-59 at 38:12-39:10; Ex. A-39 at ¶¶ 10-11; Reply Brief § III.D.1.b.

330.    Admit.

331.    Deny. Encinias has a BA in management and marketing from CSU, Pueblo. Ex. B-56 at 10:23-11:14. She began her employment at CCCF as the administrative supervisor for Dominion and received on-the-job training from the person who handled the human resources at Dominion before she became Dominion's HR manager in October 2001; after receiving the HR manager position, she received one week of training on HR matters from Carolyn Burgess at Dominion's corporate offices. *Id*. at 13:18-16:17

332.    Admit.

333.    Deny. Encinias read the sexual harassment policy as part of initial employee orientations, had employees sign acknowledgements, and kept those records, and answered any questions they might have.

334.    Admit the first sentence. Deny the second sentence, as the record Plaintiffs cite does not state that at least two of the investigators who did sexual harassment investigations had themselves been accused of sexual harassment. Admit the third sentence.

335.    Deny. The record Plaintiffs cite does not support the claimed fact.

335 (sic).    Deny. The record Plaintiffs cite supports only that she does not know whether Investigator Valdez took his files with him when he left or whether his files were located after he left CCCF; she only knows that there were none in his office after he left.

336.    Deny.  The record Plaintiffs cite does not support the claimed facts.  Candelaria was first asked to provide examples of things that might constitute sexual harassment under CCA's Policy 3-17, and responded "anything unwelcomed," or "anything that that person feels offended by that's unwelcomed."  Ex. B-59 at 30:19-32:11.  Candelaria was then asked, over objection, whether it would violate the sexual harassment policy if employees viewed pornography at work.  She responded it would not be a violation of the sexual harassment policy if the people viewing the pornography did not have an issue with viewing it, but that it might be a violation of another policy if they were not doing their job.  *Id.* 32:21-33:8.  Asked whether it was okay to view pornography at work, she responded "I never said it's okay."  *Id.* at 34:11-23.

337.    Deny.  *See* Response to PSOF 336.

338.    Deny.  The record Plaintiffs cite does not support the claimed fact.  It states that he sometimes looks at inmate pornography during cell shake-downs and is not offended.

339.    Deny.  The record Plaintiffs cite does not support the claimed fact.  It states he has sometimes walked in the control room when it's full of men only, and has seen them looking at pornography and has not taken any action if they are caught up with their work, because no females are present.

340.    Deny.  The record Plaintiffs cite relates to the time Kastelic worked for Dominion, not CCA.  For purposes of this motion, CCA lacks sufficient knowledge or belief to admit or deny things that occurred at Dominion.

III.    Legal Argument

A.    CCA Is Entitled to Summary Judgment on Successor Liability Theory

1.    The Appropriate Test

Case law evaluating the impact of *U.S. v. Bestfoods*, 524 U.S. 51 (1998), on the successor liability doctrine in Title VII cases is indeed sparse, but for the reasons stated previously, CCA maintains that *Bestfoods* calls for application of the state corporate law successor liability test, not the federal common law test plaintiffs assert.[4]  CCA Brief, pp. 27-30.  As Plaintiffs have neither argued nor made a case for successor liability under state corporate law, CCA is entitled to summary judgment on their successor liability claim.

2.     No Evidence CCA Is Dominion Defendants' Successor

Successor liability may come into play when a company buys all or substantially all of its predecessor's assets.  CCA Brief, p. 26.  Plaintiffs acknowledge that a corporation must "acquire assets of and continue the business of a predecessor corporation" to be liable under Title VII. Response Brief, p. 106, ¶ i; *see also Coffman v. Chugach Support Servs.*, 411 F.3d 1231, 1237 (11th Cir. 2005) ("Generally, one of the fundamental requirements for consideration of the imposition of successor liability is a merger or transfer of assets between the predecessor and successor companies").  The parties agree that CCA did not buy the CCCF's assets from the Dominion defendants or merge with them.  Response Brief, p. 2, ¶ 5; p. 3, ¶ 6.  There is no evidence CCA acquired all or substantially all of the Dominion defendants' assets.  Nor is there any evidence CCA substantially continued the operations of Dominion Correctional Properties or Dominion Venture Group after the CCCF sale.  Plaintiffs have not taken issue with CCA's contention that it is not a predecessor to the Dominion defendants.  CCA Brief, p. 26.  As there is

---

[4] The only reported case on this topic is *EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505 (W.D. N.Y. 2007), in which the magistrate judge held that *Bestfoods* did not mandate application of state corporate law in a Title VII case. The court held that the federal common law test had been around so long that *Bestfoods* cannot be said to have changed it.  Neither the U.S. Supreme Court nor any appellate court has ruled on this issue.

no evidence CCA is a successor to the Dominion defendants, CCA is entitled to summary judgment on the successor liability theory. *Coffman,* 411 F.3d at 1238.

>    3.    <u>No Evidence Dominion Defendants Unable to Pay a Judgment Against Them</u>

Citing *EEOC v. SWP, Inc*., 153 F. Supp. 2d 911 (N.D. Ind. 2001), Plaintiffs argue that the issue of whether the Dominion defendants are able to satisfy any judgment against them may be postponed.  *SWP*, however, does not indicate they may avoid summary judgment by leaving the issue to another day.  In *SWP*, the defendant shut its doors shortly after a Title VII verdict was entered against it, and formed a new entity.  The *SWP* court merely granted the EEOC's motion to add the new entity to the litigation, under a successor theory, to enforce the judgment.

"The very purpose of a summary judgment action is to determine whether trial is necessary."  *White v. York Int'l Corp*., 45 F.3d 357, 360 (10th Cir. 1995).  A trial is unnecessary if on a summary judgment motion a plaintiff fails to provide evidence on an essential element of its claim.  [CCA Brief, p. 25, § VI (A)]   A critical element of Plaintiffs' successor liability claim is the Dominion defendants' inability to provide relief.  *Musikiwamba v. Essi, Inc*., 760 F.2d 740, 750 (7th Cir. 1985).  To survive summary judgment, they must show the Dominion defendants' financial condition reveals their inability to provide relief.  *Scott v. Sopris Imports Ltd*., 962 F. Supp. 1356, 1360 (D. Colo. 1997); *Jackson v. Lockie Corp.,* 108 F. Supp. 2d 1164, 1168 (D. Colo. 2000).  They offer no such evidence.  They merely suggest that because one Dominion defendant dissolved in 2006, "there is good reason to doubt" any of the Dominion entities will be able to provide relief.  Response Brief, p. at 110.  Their "doubt," however, does not amount to financial evidence and is the sort of conjecture and speculation that is insufficient to avoid summary judgment.  CCA Brief, p. 25, ¶ IV (A).

4.     No Evidence CCA Had Prior Notice of Pattern or Practice Claims

Plaintiffs argue that before it bought the CCCF, CCA knew of Intervenor Christine Newland's and Lucilla Gigliotti's EEOC charges against Dominion, which in turn gave them prior notice of the pattern or practice claims alleged in this case.  Response Brief, p. 110. Whether CCA warden Brent Crouse knew of Newland's EEOC charge before the sale is disputed (*Id*. at 5, ¶ 18), but the parties agree that neither Newland's nor Gigliotti's charge contained class allegations or mentioned a class member.  *Id*. at 3, ¶ 11; p. 6 ¶ 21.  Citing *Trujillo v. Longhorn Mfg. Co., Inc*. 694 F.2d 221, 224-25, n. 3 (10th Cir. 1982), Plaintiffs argue, nonetheless, that notice of the two charges is tantamount to notice of the pattern or practice claims.  *Trujillo* was not a pattern or practice case and says no such thing.  Indeed, plaintiffs have failed to cite any authority indicating successor liability is appropriate in a Title VII pattern or practice case, let alone that notice of two single, distinct EEOC charges is enough to put an innocent buyer on notice of class-wide claims.  In *Carver v. Waste Connections of Tennessee, Inc.*, 2006 U.S. Dist. LEXIS 7881, pp. 5-6 (E.D. Tenn. 2006) (Ex. A-41), on the other hand, the court refused to hold that a purchaser's knowledge of one employee's harassment claim amounted to knowledge of other unlawful harassment.

Plaintiffs make much of an alleged Dominion investigation file that allegedly contains Gigliotti's complaints about harassment she suffered at Dominion.  Response Brief, pp. 46-48, ¶¶ 5-15; p. 109-110.   This "evidence" is not admissible.   The file documents have not been authenticated.  F.R.E. 901.  In addition, the statements attributed to Gigliotti in the file are inadmissible double hearsay.  F.R.E. 801-802.  They are reports from others about what she told them.  *See Scott*, 962 F.Supp. at 1359 (unsworn testimony about sexual harassment is hearsay

and may not be considered on a summary judgment motion). More important, there is no evidence Dominion ever provided the file to CCA or that CCA was otherwise aware of its contents. The file is inadmissible and establishes nothing.

Citing no authority, plaintiffs argue CCA had a duty to investigate Newland's and Gigliotti's charges to ascertain whether they were the "tip of the iceberg." Response Brief, p. 110. CCA was entitled to rely on the "no claims" warranties the CCCF sellers provided. CCA Brief, p. 6, ¶¶ 18-19; see *Jackson,* 108 F.Supp.2d at 1168. Moreover, it is undisputed that months before the sale, the EEOC dismissed Gigliotti's charge and the harassers she and Newland named in their charges were gone from the prison. Response Brief, p. 4, ¶¶ 14-15; p. 6, ¶ 22; p. 7, ¶ 23. The Plaintiffs' notion that had CCA dug deeper into the two charges, it would have discovered an "iceberg" is mere speculation and undermined by evidence Dominion concealed sexual harassment claims from CCA. Dominion did not identify Newland's pending EEOC charge in its disclosure documents (Ex. A-1, pp. 34-36; A-1B) and tried to conceal Pam Henderson's sexual assault claim (CCA Brief, p. 5, ¶ 17).[5]

B.    CCA Is Entitled to Summary Judgment on Pattern or Practice Claims

The EEOC relies upon a handful of cases decided by district courts in other jurisdictions which have extended the theory of pattern or practice liability to Title VII claims of sexual harassment or sexually hostile work environment. *Jenson v. Evelath Taconite Co*., 824 F. Supp. 847, 867 (D. Minn. 1993); *EEOC v. Mitsubishi Motor Manufacturing of America, Inc.,* 990 F. Supp. 1059, 1071-1072, 1077-1078 (C.D. Ill. 1998)*; EEOC v. Dial Corp*., 156 F. Supp. 2d 926, 949-950 (N.D. Ill. 2001); *EEOC v. International Profit Assoc., Inc*., 2007 U.S.Dist.LEXIS 19070

---

[5] Plaintiffs absurdly contend that CCA Warden Crouse knew of Henderson's assault as a result of a conversation with her in which she pointedly refused to disclose it. (Response Brief p. 4 ¶ 17; *but see* Reply Brief § I.A at ¶ 17.

(N.D. Ill., 2007) at * 19-22, 48-49; *EEOC v. Scolari Warehouse Markets, Inc*., 488 F.Supp.2d 1117, 1130-1131 (D. Nev. 2007) (citing *EEOC v. Mitsubishi*).  Whether other federal district and appellate courts, including this district court and the Tenth Circuit, and, ultimately, the U.S. Supreme Court, will agree that such claims may be pursued under a pattern or practice theory has yet to be determined.  CCA submits that extending pattern or practice theory to such claims is wrong because sexual harassment claims, by their very nature, definition and essential elements, demand the individualized treatment of each claimant's allegations on a case by case basis.  *See, e.g., EEOC v. International Profit Assoc.* at * 41, 48-49 (questioning use of pattern or practice theory in sexual harassment cases); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 63-69 (1986); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-23 (1993); *Faragher v. City of Boca Raton*, 524 U.S. 775, 804-807 (1998); *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 765 (1998).

The EEOC has cited no legal authority that overturns a claimant's obligation to establish all elements of a sexual harassment claim as the U.S. Supreme Court set forth in *Meritor* and *Harris*.  Neither has the EEOC cited any legal authority overturning the affirmative defense available to employers, as set forth in *Faragher* and *Ellerth* by the U.S. Supreme Court.  Even where courts have applied pattern or practice theory to sexual harassment claims, individual class members must prove all elements of a sexual harassment claim, including the element of subjective unwelcomeness.  *Mitsubishi,* 990 F.Supp. at 1077.  A pattern or practice finding does not "presume away an individual's burden of proof on elements essential to the establishment of individual liability under *Meritor* and *Harris*."  *Id*.  To the contrary, the U.S. Supreme Court "has expressly cautioned the federal courts not to do this."  *Id*.

Assuming *arguendo* this court elects to extend the pattern or practice theory of liability to sexual harassment claims, the EEOC has presented no evidence that CCA ever adopted or implemented a policy to permit sexual harassment or to retaliate against those who complained of sexual harassment. In the absence of any stated policy of sexual harassment or retaliation, the EEOC must present admissible evidence that sexual harassment and retaliation were CCA's standard operating procedure, rather than merely random, sporadic or unusual acts. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 327, 338, 360 (1977) (plaintiff in race discrimination pattern or practice case must "prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts" and must prove a discriminatory policy existed); *Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) (in a pattern or practice age discrimination case, the "plaintiff has the burden to establish that [a discriminatory policy] exists" and to "demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer."); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985) (pursuant to Fed.R.Civ.P. 56(e), court may consider only admissible evidence in ruling on summary judgment motions). To prevail, the EEOC must establish it was CCA's company policy to tolerate a workforce permeated with company-wide severe or pervasive sexual harassment. *Mitsubishi*, 990 F.Supp. at 1073.

The pattern or practice theory of liability originated in discrimination cases grounded in statistics that revealed significant statistical differences between those in the protected group and others similarly situated in the workplace. Generally, these statistical data are bolstered with anecdotal evidence, often in the form of testimony from members of the protected group who allege specific instances of discrimination. *See, e.g., Teamsters,* 431 U.S. at 337-338 (pattern or

practice claim of failure to hire or promote based on statistical evidence showing pervasive race discrimination, bolstered by testimonial evidence of over forty instances of such race discrimination); *EEOC v. Joe's Stone Crab*, 220 F.3d 1263, 1267-68 (11th Cir. 2000) (pattern or practice of gender discrimination based on statistical and testimonial evidence of failure to hire females as servers); *Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384 (5th Cir. 1983) (pattern or practice race discrimination case based on "battery of statistical evidence" that was "bolstered" by employee testimony).

Early pattern or practice cases relied heavily on statistical differences among those in the protected group and those outside the protected group with regard to hiring, promotions and other quantifiable employment actions. *See, e.g., Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245, 247 (10th Cir. 1970) (court found statistics showing blacks were denied job transfers more powerful than witness testimony and held statistics should be accorded proper weight by the courts); *Sagers v. Yellow Freight Systems, Inc.*, 529 F.2d 721 (5th Cir. 1976) (court relied on statistics that demonstrated overwhelming disparate treatment of minorities); *Boykin*, 706 F.2d at 1387-1391 ("battery of statistical evidence" showed disparities between blacks and non-blacks); *Craik v. Minn. State Univ. Bd.*, 731 F.2d 465, 471 (8th Cir. 1984) (evidence of specific incidents of alleged discrimination is relevant because it may bring "cold numbers convincingly to life.").

Here, the EEOC has presented no statistical data to prove its claims. Rather than bolstering statistical data with anecdotal testimony, the EEOC relies exclusively on anecdotal testimony by an insignificant fraction of CCA's female employee population. CCA concedes that some courts, including this Circuit, have held that statistical data need not be presented in a pattern or practice case. *See Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1265-1268 (10th Cir.

1988) (statistics not required to prove class-wide gender discrimination in job assignments, promotions, downgrading and layoffs). However, that some courts have not required statistical evidence does not mean statistical evidence is irrelevant. The EEOC cites no legal authority for its contention that statistical evidence is not relevant in pattern or practice cases. Courts must consider statistical evidence, along with other evidence, in determining whether a pattern or practice of discrimination exists. *See Craik*, 731 F.2d at 476 n. 13 (statistical evidence showing less than statistically significant disparities "*shall be* considered…in conjunction with all relevant evidence in determining whether discrepancies were due to unlawful discrimination."); *Jenson*, 824 F. Supp. at 861, 867 (plaintiffs' anecdotal evidence of discrimination, considered in conjunction with the lack of statistical proof of discrimination, failed to establish a pattern or practice of discrimination); *Pitre,* 843 F.2d at 1268-1269 (holding that statistical data need not be statistically significant in terms of statistical measurements to be considered by the court).

That neither party chose to present statistical evidence in certain cases (*e.g., Mitsubishi* and *Dial Corp.*) does not alter the court's obligation, in other cases, to consider statistical evidence that is presented. Contrary to the EEOC's assertions, the court in *Scolari* did not find the defendant's statistics "meaningless;" rather, the court found the employer's statistics unpersuasive, based on: (1) the EEOC's evidence that although only 17 class members had yet come forward, it had received 500 additional complaints of sexual harassment; (2) the report of the EEOC's expert witness which addressed the scope of the sexual harassment in the workplace; and (3) the court's own speculations about reasons employees may have had for leaving their jobs with the company or failing to come forward as claimants in the case. *Scolari*, 488 F.Supp.2d at 1130-1131, 1134. The first two bases do not apply to the facts of the present case,

and the court's reliance on its own speculations, rather than admissible evidence, was contrary to the mandates of Fed.R.Civ.P. 56(e).

CCA has presented statistical evidence which shows that the number of CCA employees who complain of sexual harassment or retaliation is insignificant and reveals no evidence of a company-wide pattern or practice of sexual harassment or retaliation.[6]  SOF 27, 32-33.   CCA has relied on the same type of statistics the court relied upon in *Teamsters*, 431 U.S. at 337-338 (court relied on statistics showing 9% of employees were Black or Hispanic, yet only .7% of them held high-paying driver positions).  CCA's statistical evidence reveals a work environment that has included 795 employees since January 2003, of which 343 have been female (43%) and 452 (56%) have been male.  Response to SOF 27.  Of the 343 female employees, only ten (10) are class members who claim sexual harassment occurred at CCA (2.9%), and only eight (8) are class members who claim retaliation occurred at CCA (2.3%).[7]   Overall, only 2.9% of all females who have worked at the prison for CCA complain of sexual harassment or retaliation. Response to SOF 32 & 33.   Far from bringing "cold numbers" of discrimination "convincingly to life," the EEOC's anecdotal evidence from less than 2.9% of all female CCA employees is insignificant and directly at odds with the statistical data.[8]  *See Craik*, 731 F.2d at 471.  The statistics drop to only 5 class members claiming sexual harassment and 5 claiming retaliation, a

---

[6] Plaintiffs' arguments regarding CCA's statistics are disingenuous, as they are fully aware of the number of female employees CCA employed at the prison at any given time, based on the employee roster CCA produced to them on February 13, 2007 (attached hereto as Exhibit A-38), which shows the CCA employees who have worked at CCCF, including each employee's gender, date of hire and date of termination.  Accordingly, Plaintiffs know the employee roster refutes their specious argument that CCA possibly employed only one female worker at a time at the prison.
[7] As  Tavarez has confirmed she does not assert a retaliation claim against CCA (*see* Response Brief at p. 146, ¶ 5), she has been deleted from those asserting retaliation claims against CCA.  Seven of the CCA class members allege both sexual harassment and retaliation.
[8] *See* Response to SOF 27-33, admitting CCA's statistics are accurate.  Moreover, as addressed below, much of the EEOC's evidence is inaccurate or inadmissible, in addition to being insignificant.

total of only 1.4%, after class members who have no actionable claims of sexual harassment or retaliation are removed.   *See* Reply Brief § III.C.

In *Jenson*, the court specifically "conclude[d] that Plaintiffs' anecdotal evidence of discrimination, *when considered in light of the lack of statistical proof of discrimination*, did not establish by a preponderance of the evidence a pattern or practice" of discrimination.   *Jenson* at 867 (emphasis added).   Further, in *Pitre*, a class action gender discrimination case regarding hiring, promotions, layoffs and downgrading, the court's decision not to require statistical evidence was premised, in part, on the fact that the sample size at issue was too small.   *Pitre* at 1267-1268.   The court further stated:

> If the statistical disparity is insufficient, alone, to establish a *prima facie* case, the plaintiff may get over his or her initial hurdle by combining statistics with historical, individual or circumstantial evidence.

*Pitre* at 1267 (citations omitted).   Unlike the facts in the *Pitre* case, the sample size in this case is not so small that it impairs the effective use of statistics.   *Id*. at 1268.

The absence of any statistical evidence showing a pattern or practice of sexual harassment or retaliation at CCA should also be considered because:

> [A] pattern or practice case based on hostile work environment claims presents a conflict between the consideration of the employer's attitude toward a protected group as a whole and the adjudication of issues that may be unique to each individual perpetrator and each individual claimant.   This is a tension that has been recognized by other courts that have considered similar cases (citation omitted).   The pattern or practice model…breaks down for sexual harassment claims…because the two seminal cases defining the essence of a claim of sexual harassment -- *Meritor* and *Harris* -- require consideration of individual issues and defenses particular to an individual claimant.

*EEOC v. Internat'l Profit Assoc.*, at * 41 (citing *Mitsubishi* at 1071).

In the absence of statistical evidence to support its pattern or practice claim, the EEOC asks this court to presume the existence of a pattern or practice of sexual harassment or retaliation based solely on a handful of highly individualized claims that are random, isolated and sporadic, and then turn around and use that presumption to prove the individualized claims. The inherent danger in allowing such a scheme is readily apparent, as a finding of pattern or practice discrimination may raise a rebuttable presumption of discrimination against the employer, permit an award of equitable relief, and shift the burden of production from the plaintiff to the employer to prove that the presumed pattern or practice of discrimination was not followed as to individual class members. *See Jenson*, 824 F.Supp. at 875-876 (no presumption arises, as each claimant must prove remaining elements of sexual harassment claim, including subjective unwelcomeness); *Mitsubishi*, 990 F.Supp. at 1076-1077 (rebuttable presumption arises after EEOC proves all elements except subjective unwelcomeness). Such a result is not justified where the totality of the evidence, including the statistical data, shows no pattern or practice of company-wide sexual harassment or retaliation. In short, this court should not permit the EEOC to use pieces of a tail to presume the existence of a dog, and then use the presumption of a dog to prove the existence of a tail.

    1.    <u>EEOC's Evidence Is Legally Insufficient to Prove Pattern or Practice Claim</u>

Much of the EEOC's proffered testimony is from witnesses who never worked at CCA, relates to the time period that witnesses worked for Dominion rather than CCA, and/or is otherwise inadmissible. Nine (9) of the EEOC's witnesses, Darlene Alvord (PSOF 101-105), Caroline Baylor (PSOF 120-125), Pamela Henderson (PSOF 155-161), Sunni O'Maley (PSOF 209-211), Janelle Marquez (PSOF 199-201), Debbie Salas (PSOF 233-236), Dolores Salazar

(PSOF 237-254), Valori Segura (PSOF 255-261) and Shirley Richardson (PSOF 219-224), have no relevant testimony to provide against CCA as they never worked at CCA (Response to SOF 28 & 29); Three (3) of the EEOC's witnesses, Genevieve Luna, Lisa Marie Maize, and Pam Pearce, allege irrelevant events that occurred at Dominion, *before* they became CCA employees (Response to PSOF 166-169, 171, 189, 192, 214); Nine (9) of the EEOC's witnesses, Amanda Marquez, Genevieve Luna, Venisha Lopez, Marcia Manchego, Emma Cordova, Lisa Marie Maize, Pam Pearce, Kathleen Robinson and Catheryn Watkins, offer testimony that is otherwise inadmissible (*see* Reply Brief § IV.C.1.a, *infra*) because it is irrelevant, speculative, lacks foundation, lacks personal knowledge, is hearsay, is improper opinion testimony by a lay witness, and/or is unduly prejudicial. Fed. R. Evid. 401, 402, 403, 602, 702-705, 801, 802. All such testimony should be excluded.[9]

While otherwise admissible testimony regarding events that allegedly occurred at the prison during the Dominion-era may be relevant for purposes of this motion only to the issue of successor liability (*see* Reply Brief at § III.A, *supra*), such testimony is irrelevant to Plaintiffs' claims of liability against CCA for acts that allegedly occurred after CCA took control of the prison, and on which CCA seeks summary judgment (Reply Brief at § III.B-D). The EEOC has cited no legal authority that supports the application of pattern or practice liability against an alleged successor for a pattern or practice of sexual harassment that occurred at a predecessor's business. Successor liability was not at issue in *Tademy* or *Morgan*, as the plaintiffs in both cases worked for the same employer at all times. *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1170-1171 (10th Cir. 2008); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

---

[9] *See World of Sleep,* 756 F.2d at 1474 (holding courts may consider only admissible evidence in ruling on summary judgment motions); Fed.R.Civ.P. 56(e).

116-117 (2002).    Rather, each case addressed the "single unlawful employment practice standard" regarding claims against the same employer that were outside the statutory period.  *Id*. Neither case involved claims of pattern or practice discrimination.  *Id*.

a.    Inadmissible Evidence Cannot Be Considered

All claimed facts relating to class members who were never employed by CCA, or time periods class members were employed at the prison by Dominion, are irrelevant and inadmissible to Plaintiffs' claims of direct liability against CCA.  Response to PSOF 101-105, 120-125, 155-161, 166-171, 199-211, 214, 219-224, 233-268; Reply Brief § III.A.  Similarly, all claimed facts relating to class members as to whom CCA has *not* moved for summary judgment are not relevant to the individual claims of the seven class members as to whom CCA has moved for summary judgment.  Response to PSOF 101-105, 120-125, 126-149, 155-161, 188-224, 233-261, 270-280.  The following evidence is also inadmissible for the reasons stated:

**Amanda Armstrong Marquez**

(1)    *Reply to SOF 52*:  Testimony that unidentified person(s) told Marquez that Gonzales told them she had thrown a "hissy fit" (Ex. A-26 at 42:23-44:4) is hearsay and double hearsay (Fed. R. Evid. 801, 802, 805), lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), and is unduly prejudicial (Fed. R. Evid. 403).

(2)    *Reply to SOF 52*:  Marquez' beliefs and speculations about Gonzales' apology and what he thought or intended are irrelevant (Fed. R. Evid. 402), lack foundation, lack personal knowledge (Fed. R. Evid. 602), are speculation and are unduly prejudicial (Fed. R. Evid. 403).

(3)     *Reply to SOF 63*:  Marquez' beliefs about what Palomino thought or intended are irrelevant (Fed. R. Evid. 402), lack foundation, lack personal knowledge (Fed. R. Evid. 602), are speculation, and are unduly prejudicial (Fed. R. Evid. 403).

(4)     *Response to PSOF 118*:  As Marquez does not specify who she heard talking about her complaint against Gonzales, or from whom these unidentified individuals had learned of her complaint, this testimony lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), is hearsay and double hearsay (Fed. R. Evid. 801, 802, 805), is speculation, and is unduly prejudicial (Fed. R. Evid. 403).

**Genevieve Luna**

(5)     *Response to PSOF 172*:  Luna's alleged feelings about her job are irrelevant (Fed. R. Evid. 402) to the issue of liability and, thus, to CCA's motion.

(6)     *Response to PSOF 173*:  Luna's alleged emotional distress is irrelevant (Fed. R. Evid. 402) to the issue of liability and, thus, to CCA's motion.

**Venisha Lopez**

(7)     *Response to PSOF 183*:  Lopez's belief that CCA would not listen to her or believe her is speculation, lacks foundation and lacks personal knowledge (Fed. R. Evid. 602).

(8)     *Response to PSOF 182*:  Lopez has not provided the name of the male officer and her speculations about whether the nurse found the conduct unwelcome lack foundation, lack personal knowledge (Fed. R. Evid. 602), are irrelevant (Fed. R. Evid. 801, 802) and are prejudicial (Fed. R. Evid. 403).

(9)     *Response to PSOF 187*:  Lopez's desires are irrelevant (Fed. R. Evid. 402).

**Marcia Manchego**

(10)    *Reply to SOF 147*:  Mr. Roseman's affidavit should be rejected as he cannot serve as counsel for three of the parties and as a witness in this case.  Further, whether the return address is real or not is irrelevant (Fed. R. Evid. 402).

(11)    *Reply to SOF 158*:  Manchego's "gut feeling" that she did not trust Encinias is irrelevant (Fed. R. Evid. 402), lacks foundation, is based on speculation and is unduly prejudicial (Fed. R. Evid. 403).  Her belief she could not "trust anybody" at CCA, based solely on her inadmissible belief she could not trust Encinias, is inadmissible for the same reasons.

**Emma Cordova**

(12)    *Response to PSOF 129*:  Cordova's testimony about alleged retaliation against other female employees lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), is hearsay (Fed. R. Evid. 801, 802), is speculation, and is unduly prejudicial (Fed. R. Evid. 403).

(13)    *Response to PSOF 130*:  Larkin's alleged comments to Cordova lack foundation, lack personal knowledge (Fed. R. Evid. 602), are hearsay (Fed. R. Evid. 801, 802), are speculation, and are unduly prejudicial (Fed. R. Evid. 403).

(14)    *Response to PSOF 132*:  As Cordova lacks any personal knowledge about what other female employees feel, think, or believe, such testimony lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), is speculative, and, if based on things unnamed females told her, is hearsay (Fed. R. Evid. 801, 802).

(15)    *Response to PSOF 149*:  Cordova's alleged damages are irrelevant (Fed. R. Evid. 402) to the issue of liability and, thus, to CCA's motion.

**Lisa Marie Maize**

(16)    *Response to PSOF 189*:  Maize's allegations relating to the time she worked at Dominion are irrelevant (Fed. R. Evid. 402); she fails to distinguish between events that occurred when she worked for Dominion and those that occurred when she worked for CCA.  Thus, her allegations lack of foundation, are irrelevant (Fed. R. Evid. 402), and are unduly prejudicial (Fed. R. Evid. 403).  As Maize also has no personal knowledge about whether Smith believed she was being ostracized or ignored, such testimony is irrelevant speculation, lacks foundation and lacks personal knowledge (Fed. R. Evid. 602).

(17)    *Response to PSOF 190*:  As Maize is not certain she reported sexual harassment to Flores and does not recall any specifics about what she may have reported, such testimony lacks foundation, is hearsay (Fed. R. Evid. 801, 802), lacks personal knowledge (Fed. R. Evid. 602), and is unduly prejudicial (Fed. R. Evid. 403).

(18)    *Response to PSOF 195 & 196*:  As Maize's vague allegations provide no specifics, they lack foundation, lack personal knowledge (Fed. R. Evid. 602), are speculation and are unduly prejudicial (Fed. R. Evid. 403).

**Pam Pearce**

(19)    *Response to PSOF 216*:  As Pearce's testimony about Brizendine's alleged sexual relationship with other employees is based on speculation and rumor, it lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), is speculation and is unduly prejudicial (Fed. R. Evid. 403).

(20)    *Response to PSOF 217*:  Pearce's testimony about a connection between her termination and her comments to Brizendine lacks foundation, lacks personal knowledge (Fed. R. Evid. 602) and is pure speculation.  *See* Response to PSOF 216.

**Kathleen Robinson**

(21)    *Response to PSOF 227*:  As Robinson does not provide the names of the two male officers, the testimony lacks foundation and is hearsay (Fed. R. Evid. 801, 802).

(22)    *Response to PSOF 228*:  As Robinson has no personal knowledge of what the director of nursing was thinking or whether she was surprised, such testimony is speculation, lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), and is unduly prejudicial (Fed. R. Evid. 403).

(23)    *Response to PSOF 230*:  As Robinson has no personal knowledge about why the nurse behaved as she observed, such testimony lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), is speculation and is unduly prejudicial (Fed. R. Evid. 403).

(24)    *Response to PSOF 232*:  As these allegations relate to Robinson's alleged damages, they are irrelevant (Fed. R. Evid. 402) to the issue of liability and, thus, CCA's motion.

**Catheryn Watkins**

(25)    *Response to PSOF 273*:  As Watkins cannot identify the male officers who made the alleged jokes or comments, or the content of the jokes or comments, the testimony lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), is hearsay (Fed. R. Evid. 801, 802), is speculation and is unduly prejudicial (Fed. R. Evid. 403).

**Training**

(26)    *Response to PSOF 285*:  As Rutledge never worked for CCA, what he knew or did not know is irrelevant (Fed. R. Evid. 402).

(27)    *Response to PSOF 318 and 320*:  Whether Dominion trained or did not train Alvord or Richardson is irrelevant (Fed. R. Evid. 402), as neither worked at CCA.

**Other**

(28)    *Response to PSOF 32-42*:     The facts underlying the terminations of ten other female employees for improper inmate contacts in violation of Policy 3-3 are irrelevant (Fed. R. Evid. 402), hearsay (Fed. R. Evid. 801, 802), lack foundation, lack personal knowledge and are unduly prejudicial (Fed. R. Evid. 403).

        b.    <u>Admissible Evidence Legally Insufficient</u>

The EEOC's admissible evidence fails to establish it was CCA's policy or usual practice to condone sexual harassment or to retaliate against those who complained of sexual harassment. Instead, the admissible testimony, taken as a whole in conjunction with CCA's statistical evidence, demonstrates only that a tiny group of female employees have alleged highly individualized claims of random, sporadic sexual harassment or retaliation engaged in by different alleged perpetrators.  Only five (5) class members (Venisha Lopez, Marcia Manchego, Emma Cordova, Catheryn Watkins and Lisa Marie Maize) allege sexual harassment against any of the same alleged perpetrators at CCA, and the comments and conduct each alleges are highly personal and varied, and occurred at different times and places, under distinctly different circumstances:  Lopez, Watkins and Cordova allege sexual harassment by Flores (Response to PSOF 133, 157, 176, 274, 276, 277); Maize and Manchego allege sexual harassment by Luna

(Response to PSOF 139, 192); Maize and Cordova allege sexual harassment by Kastelic (Response to PSOF 145, 193).    Each of the remaining class members asserts highly individualized claims of sexual harassment or retaliation against different alleged perpetrators, and all such claims are alleged to have occurred at differing times and places and under differing and unique circumstances.  Lopez complains against six (6) different alleged perpetrators: Flores, Trujillo, Patterson, Frakes, Bonner and Theile (Response to SOF 71-88; Reply to SOF 75-78, 81, 83, 87, 88; Response to PSOF 175-184).  Manchego, Maize and Marquez each complain against four (4) different alleged perpetrators: Manchego against Minjarez, Luna, Martinez and Even Response to SOF 155-163); Maize against McLeod, Sparks, Chavez and Kastelic (Response to PSOF 188-198); and Marquez against Gonzales, Kastelic, Palomino and Baylor) (Response to SOF 54-71; Reply to SOF 60, 61, 63, 64, 67, 71; Response to PSOF 106-119).  These varied and personal allegations span across five years of round-the-clock prison operations from 2003-2007, and necessarily represent only the tiniest fragment of human interactions that occurred over this time period within the prison walls.  None of the class members alleges retaliation against the same alleged perpetrator at CCA.

Title VII is not a general civility code.  *Faragher,* 524 U.S. at 788.  To be actionable, harassment must be "extreme."  *Id.*    To prove a pattern or practice of sexual harassment or retaliation, the EEOC must prove that tolerating such extreme conduct was CCA's policy or standard operating procedure.  *Teamsters,* 431 U.S. at 338, 360; *Theissen,* 267 F.3d at 1106.  "A pattern or practice case seeks to eradicate systemic, company-wide discrimination and focuses on an objectively verifiable policy or practice of discrimination by a private employer against its employees."  *Mitsubishi* at 1070.  A company must have notice of the alleged company-wide

sexual harassment, based on evidence that it knew or should have known its workplace was "permeated with sexual harassment." *Id*. at 1075.  After having such notice of company-wide sexual harassment, the company must fail to take steps to address the problem on a company-wide basis.  *Id*.  Factors to be considered in determining whether conduct reached the requisite severe or pervasive threshold "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-117 (2002).  The strength of a hostile work environment claim "depends on the number of incidents and the intensity of each incident." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir 1991) (in a racially hostile work environment case brought by a single plaintiff, court concluded two incidents where a noose was found hanging over a black employee's work station were sufficiently severe to establish his *prima facie* case of racially hostile work environment).

Although some courts have based pattern or practice findings on continuous, repeated sexual harassment perpetrated by an employer's owners and managing agent against a relatively small percentage of claimants, such findings are distinguishable because, here, no claimants allege sexual harassment against any of CCA's owners.  *EEOC v. Burlington Medical Supplies, Inc.*, 536 F.Supp.2d 647, 652-653 (E.D. Va. 2008); *Internat'l Profit* at *10-11; *see also Burns v. McGregor Electronics Ind., Inc.*, 955 F.2d 559, 560-564 (8th Cir. 1992) (in single plaintiff case, sexual harassment found where evidence showed most of the continuous, repeated sexual conduct alleged was perpetrated by the company's owner, who had also engaged in the same

sexually improper conduct "with almost everyone at the plant," and plaintiff's repeated complaints about the owner's conduct were ignored).

In *Smith v. Norwest Fin. Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997), the individual plaintiff's sexually hostile work environment claim was based on sexually-charged comments her male supervisor made to her, in a confined work area and in the presence of all her coworkers, that were repeated frequently over a 23-month time period.  *Id.* at 1412-1415.  Coworkers heard the comments and testified they negatively affected the whole office and visibly affected the plaintiff's ability to do her job.  *Id.* at 1413, 1415.  In contrast, this is a pattern or practice case where the allegations of sexual harassment involve different claimants asserting varied allegations against different alleged perpetrators at different times and places over a five-year time span, rather than a single plaintiff asserting repetitive allegations against the same alleged perpetrator.

*Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 673 (D. Kan. 2004) also fails to support the EEOC's sexual harassment pattern or practice claim.  There, the plaintiff provided direct evidence of derogatory racial remarks.  *Id.* at 673.  The court dismissed plaintiff's class action and individual claims of race discrimination and hostile work environment, concluding he had failed to show racially harassing behavior was pervasive because he did not show "more than a few incidents of racial enmity," or a "steady barrage of opprobrious racial comments.'"  *Id.* at 670, 673.  Here, the EEOC provides no record citations to support its assertion that "constant demeaning comments and inappropriate jokes…were made openly throughout the prison," or that "this conduct *would have been* experienced by nearly all of the female employees at the prison."  Response Brief at p. 115 (emphasis added).

The claimed facts upon which the EEOC relies to support its sexual harassment and retaliation pattern or practice claims are irrelevant, otherwise inadmissible, inaccurate and/or too insignificant to demonstrate a company-wide pattern or practice of sexual harassment or retaliation.  Thus, they fail to rise to the requisite level of severity or pervasiveness to constitute actionable sexual harassment or retaliation and fail to show that tolerating sexual harassment and retaliation was CCA's standard operating procedure:

- The EEOC's claimed facts to support its contention that claimants were "propositioned" by their supervisors (Response Brief at pp.118-120) are inaccurate (Response to PSOF 115, 170); irrelevant because they occurred at Dominion, not CCA (Response to PSOF 168); or insignificant (Reply to SOF 80-81, 82; Response to PSOF 109, 179).  CCA does not seek summary judgment as to Watkins' highly personal and individualized allegations against Flores (Reply to PSOF 276).

- The EEOC's claimed facts to support its contention that claimants were "sexually assaulted" (Response Brief at pp. 120-121) are inadmissible (Response to PSOF 182); irrelevant because they occurred at Dominion, not CCA (Response to PSOF 156, 171); or insignificant (Response to PSOF 116, 177, 137; Reply to SOF 77).  Again, CCA does not seek summary judgment as to Watkins' highly personal and individualized claims against Flores (Reply to PSOF 276, 277).

- The EEOC's claimed facts to support its contention that claimants were "treated as sexual objects" (Response Brief at pp. 121-123) are inadmissible (Response to PSOF 189, 190, 194, 227, 273); irrelevant because they occurred at Dominion, not CCA (Response to PSOF 166, 167, 169, 190, 202-207, 209-211); inaccurate (Response to

PSOF 116); or insignificant (Response to PSOF 134, 138, 139, 142, 176, 178, 191, 192, 193, 194, 227, 229, 273; Reply to SOF 80-81). CCA does not seek summary judgment as to Cordova's personal, individualized claims against Baca (Reply to PSOF 143, 144). The record Plaintiffs cite does not support the purported fact (presented only in Plaintiffs' legal argument) that "Graphic pornography was played on the televisions" or openly displayed. *See* Response Brief, p. 123. The EEOC also provides no record citations to support its assertions that the alleged conduct "was clearly based on the women's gender," or that "women testified that the male employees were not treated in the same demeaning fashion." Response Brief at p. 124. This is not the case, as Newland was disciplined based on complaints by male subordinates that she made sexual comments about a male subordinate's genitals (Reply to SOF 167-169), and Lopez was terminated based on complaints by male officers that she made sexual comments about sex toys and sexual acts (Reply to SOF 88).

• The EEOC's claimed facts to support its contention that the conduct alleged was unwelcome (Response Brief at pp. 124) are irrelevant and inadmissible because they occurred at Dominion, not CCA (Reply to PSOF 168, 265, 268); or insignificant (Reply to PSOF 135, 136, 177, 179). Moreover, as the claimed facts pertain to only four (4) class members (Lopez, Cordova, Tavarez and Luna), they fail to support the EEOC's assertion that "*Nearly all of the women* testified that they either directly told the men to stop or indicated by their conduct that the sexual harassment was not welcome." Response Brief at p. 124 (emphasis added).

- To support its contention that CCA tolerated or condoned sexual harassment (Response Brief at pp. 125), the EEOC relies on many of the same facts presented to support its previous contentions, which are irrelevant, otherwise inadmissible, inaccurate or insignificant for the reasons stated above. The EEOC's new claimed facts are inadmissible (Reply to PSOF 182) or insignificant (Reply to PSOF 274).

- To support it contention that CCA knew of the alleged sexual harassment and failed to take action (Response Brief at p. 125-126), the EEOC relies on some of the same facts it presented to support its previous contentions, which are irrelevant, otherwise inadmissible, inaccurate or insignificant for the reasons stated above. The EEOC's additional claimed facts, most of which relate to Cordova, are inadmissible (Response to PSOF 129, 130, 228); or insignificant (Response to PSOF 133, 137, 177, 180). After Robinson complained about a male officer's comment, she never saw or had to work with that officer again. Response to PSOF 228. The record cited by the EEOC to support its claimed fact that Lopez was terminated because she rebuffed sexual advances (Response Brief at p. 126) does not support the claimed fact. Lopez never reported any sexual harassment. Reply to SOF 76, 78, 87. CCA is not moving for summary judgment as to Cordova's allegations (Reply to PSOF 147, 272, 275).

The claimed facts upon which the EEOC relies to support its claim that CCA engaged in a pattern or practice of retaliation (Response Brief at pp. 127-129) are irrelevant, otherwise inadmissible, inaccurate and/or insignificant and, thus, fail to show that retaliation against those who complained of sexual harassment was CCA's standard operating procedure. Again, the EEOC relies on many of the same facts it presented to support its previous contentions, which

are irrelevant, otherwise inadmissible, inaccurate or insignificant for the reasons stated above. The EEOC's new claimed facts are inaccurate and/or insignificant (Response to PSOF 117, 186; Reply to SOF 83, 87).

The EEOC's admissible evidence, viewed in the light most favorable to the EEOC, fails to establish that tolerating sexual harassment or retaliation were CCA's policy or standard operation procedure. Thus, the EEOC's evidence fails to establish the existence of a company-wide pattern or practice of sexual harassment or retaliation at CCA, and CCA is entitled to summary judgment as a matter of law on the EEOC's pattern or practice claims. As the Intervenors cannot individually assert pattern or practice claims on their own behalves, CCA is also entitled to summary judgment as a matter of law on the Intervenors' pattern or practice claims. *EEOC v. Burlington Medical*, 536 F.Supp.2d at 655 (only the EEOC may bring a pattern or practice case; private plaintiffs filing class actions must comply with Fed.R.Civ.P. 23).

C.     CCA Is Entitled to Summary Judgment on the Claims of Seven CCA Class Members

The cases upon which the EEOC relies for concluding the court cannot grant summary judgment in this case as to individual class members are distinguishable, because those cases were bifurcated into two phases: an initial liability phase to determine pattern or practice liability and equitable remedies flowing from that liability determination; and a second phase to determine liability for the claims of individual class members and, if such liability was found, to determine individual damages. *Teamsters* at 343; *Theissen*, at 1106; *Mitsubishi.*, 990 F. Supp. at 1071-1072, 1077-1078; *Jenson*, 824 F. Supp. at 856; *EEOC v. Outback Steakhouse of Florida, Inc.*, 2008 U.S. Dist. LEXIS 63747 (D. Colo. 2008), *9-11.

In contrast, this case is not bifurcated into two phases. The EEOC voluntarily withdrew its motion to bifurcate in open court. Courtroom Minutes, August 10, 2007 [Dkt. 115]. As such, CCA must be permitted to seek summary judgment, or partial summary judgment, both on the EEOC's pattern or practice claim and the claims of individual class members. To hold otherwise would deprive CCA of access to Fed.R.Civ.P. 56 with regard to the claims of the individual class members by removing at least one of the essential elements each class member must prove to establish their claims of sexual harassment, *i.e.*, the element of subjective unwelcomeness, and by removing its affirmative defense under *Ellerth* and *Faragher*. The EEOC has cited no case law holding that an employer in a pattern or practice case is deprived of access to Fed.R.Civ.P. 56 with regard to the claims of individual class members.

The claims of seven CCA class members fail as a matter of law to constitute actionable sexual harassment or retaliation, with or without any presumption of sexual harassment or retaliation that may flow from a pattern or practice finding. Even where pattern or practice theory is applied to sexual harassment claims, individual class members still must prove all elements of a sexual harassment claim, because a pattern or practice finding does not "presume away an individual's burden of proof on elements essential to the establishment of individual liability under *Meritor* and *Harris*." *Mitsubishi* at 1077.

    1.    <u>Legal Standards Applicable to Sexual Harassment and Retaliation Claims</u>

        a.    <u>Sexual Harassment</u>

Sexual harassment consists of "*unwelcome* sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature." 29 C.F.R. § 1604.11 (a) (emphasis added); *see Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986). Plaintiffs must show that

each of the seven class members was subjected to sexual harassment because of her sex, and that the harassment was severe or pervasive enough to alter the terms or conditions of her employment or create a hostile or abusive work environment. *Penry v. Federal Home Loan Bank or Topeka*, 155 F.3d. 1257, 1261, (10th Cir. 1998). Plaintiffs must also prove for each class member that the harassment was both objectively and subjectively offensive and unwelcome. *Faragher*, 524 U.S. at 787. Although a pattern or practice finding may create a rebuttable presumption that the objective component of this element has been met, each class member must still prove that the harassment was subjectively offensive and unwelcome and that it unreasonably interfered with her work performance or altered a term or condition of her employment. *Jenson*, 824 F.Supp. at 875-876; *Mitsubishi*, 990 F.Supp. at 1076-1077; *Meritor*, 477 U.S. at 67; *Harris*, 510 U.S. at 23. These standards are "exacting and rigid." *Joiner v. Wal-Mart Stores, Inc.*, 114 F. Supp.2d 400, 411 (W.D. N.C. 2000).

Even if harassment occurs, an employer is not automatically liable for harassment perpetrated by its employees. *Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001). Plaintiffs must prove the employer is vicariously or directly liable for the alleged sexual harassment. *Id.* at 1258-59. Direct liability exists only when an employer had actual or constructive knowledge of unlawful harassment and failed to respond "in a reasonable manner." *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000). Vicarious liability exists when a plaintiff's immediate or successively higher supervisor misuses his supervisory power to create a hostile environment. *Faragher*, 524 U.S. at 802, 804, 807-808.

b.    *Ellerth-Faragher* Affirmative Defense

An employer may "show as an affirmative defense to liability that the employer had exercised reasonable care to avoid harassment and to eliminate it when it might occur, and that the complaining employee had failed to act with reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." *Faragher*, 524 U.S. at 805, 807; *Ellerth*, 524 U.S. at 765.[10]    "[P]roof that an employer had promulgated an anti-harassment policy with a complaint procedure is not necessary in every instance." *Faragher*, 524 U.S. at 807.    However, the "distribution of a valid anti-harassment policy provides compelling proof that [an employer] exercised reasonable care in preventing and promptly correcting sexual harassment."  *Weger v. City of Ladue*, 500 F.3d 710, 719 (8th Cir. 2007) (internal quotation marks and citation omitted); *Adams v. O'Reilly Automotive, Inc.*, 2008 U.S.App.LEXIS 17313 (8th Cir. 2008), *3-4.    When an employer adopts an anti-harassment policy and disseminates the policy and its procedures to employees, it is incumbent upon the employees to use the procedures to report policy violations.  *Farley v. American Cast Iron Pipe*, 115 F.3d 1548, 1554 (11th Cir.1997); *see also Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir.1997); *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300 (11th Cir. 2000), *cert. denied*, 531 U.S. 926 (2000) (a company is not on notice of sexual harassment complaints where employees fail to report complaints to persons designated in harassment policies as persons to accept such complaints).

To prove the defense, the employer must show: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the plaintiff employee

---

[10] Contrary to the EEOC's contention, CCA does rely upon the *Faragher-Ellerth* defense as a basis for summary judgment in this case.   CCA's Brief in Support of Motion for Partial Summary Judgment [Dkt. 183] at p. 38.

unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  *Faragher* at 807; *Ellerth* at 765.  The defense is not available when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment.  *Faragher* at  808; *Ellerth* at 765.

It is undisputed that CCA adopted and implemented a "zero tolerance" sexual harassment policy, Policy 3-17, which prohibits sexual harassment or retaliation.  Ex. A-5A; Response to SOF 35.  The policy includes a complaint procedure and calls for the investigation of reports of sexual harassment.  *Id*.  The policy states that allegations of sexual harassment should be reported immediately to the warden or assistant warden, or may be reported to the human resources manager or any other member of management.  *Id*.  Complaints are treated as confidentially as possible and employees are assured they will not be retaliated against for having made the complaint.  Response to SOF 36.  The policy is widely disseminated through orientation and annual refresher training that includes a PowerPoint slide presentation and permits time for questions, as well as posters displayed in various areas of the prison.  Reply to SOF 37-38.  In addition, laminated "Warden's Daily Reminders" cards, which emphasize that "sexual harassment will not be tolerated," are disseminated among prison staff. Reply to SOF 39.  CCA's policy is distinctly similar to policies courts have held sufficient to establish the first prong of the *Ellerth-Faragher* defense.  *Adams v. O'Reilly at * 4-5; *Williams v. Missouri Dept. of Mental Health*, 407 F.3d 972, 977 (8th Cir. 2005), *cert. denied*, 546 U.S. 1091 (2006).   As addressed below, in §III.D, Plaintiffs' allegation that CCA's investigation procedures have not achieved perfection misses the mark, as the defense requires only reasonable efforts, not perfection. *Faragher* at 807.

c.    Retaliation

Title VII prohibits employers from retaliating against employees because they opposed Title VII violations, filed an EEOC charge of discrimination, or participated in an EEOC investigation of discrimination.  49 U.S.C. § 2000e-3(a).  A plaintiff must first establish a *prima face* case of retaliation.  If she does so, the employer must offer a legitimate, nondiscriminatory reason for its challenged action.  If it does so, the plaintiff must show the employer's reason was a pretext for retaliation.  *Somoza v. University of Denver,* 513 F.3d 1206 (10th Cir. 2008).

To establish a *prima facie* retaliation case, a plaintiff must show: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the alleged retaliatory action materially adverse; and, (3) a causal connection exists between the protected activity and the alleged retaliation.  *Id.*   Action is "materially adverse" if it would have dissuaded a reasonable employee from making or supporting a discrimination charge.  *Id.*  Thus, adverse action must be significant, not trivial.  *Clegg v. Arkansas Dep't of Corrections*, 496 F.3d 922, 929 (8th Cir. 2007).   Pretext may be found only here there are such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employers reasons for its action that a jury could find the reasons "unworthy of belief."  *Timmerman v. U. S. Bank,* 483 F.3d 1106, 1113 (10th Cir. 2007).

2.    CCA Is Entitled to Summary Judgment on the Claims of Amanda Marquez

Gonzales' two comments (Response to SOF 58; Rewponse to PSOF 109-110) were not extreme enough to rise to Title VII's "demanding" sexual harassment standard.  *Faragher*, 524 U.S. at 788.  They were insignificant and neither severe nor pervasive enough to interfere unreasonably with Marquez' work performance.  They were merely the type of "simple teasing"

and offhand, isolated comments the Supreme Court has placed beyond Title VII's reach.  *Id.*
Moreover, CCA is not liable for the conduct because it took prompt and effective remedial
action.  *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 676-678 (10th Cir. 1998).  After she
complained, CCA investigated and disciplined Gonzales.  Response to SOF 59; Reply to SOF
60.  Gonzales wrote a letter of apology and never harassed her again.  Response to SOF 62;
Reply to SOF 61.  Marquez' beliefs about his apology are inadmissible.  Reply Brief §
III.C.1.a(1) & (2).  Plaintiffs' reliance on *Harvill v. Westward Communications, LLC*, 433 F.3d
428 (5th Cir. 2005) is misplaced.  Regardless of when she received the apology letter, Marquez
assumed the Gonzales matter had been "taken care of." Response to SOF 71; Reply to SOF 71.

Plaintiffs' reliance on *EEOC v. PVNF LLC*, 487 F.3d 790, 799 (10th Cir. 2007) and *Penry
v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1262 (10th Cir. 1998) is misplaced.  Even
considering the totality of the evidence, Marquez' allegations woefully fail to show the requisite
severity or pervasiveness, or any unreasonable interference with her work performance.
Gonzales' two comments are disconnected from Palomino's innocent remark.  Palomino never
propositioned Marquez.  Response to PSOF 115; Reply to SOF 63-64.  Her assumption that he
was "propositioning" her is unreasonable and also inadmissible, irrelevant speculation.  Reply
Brief § III.C.1.a(3).  Plaintiffs' reliance on *Ash v. Tyson Foods*, 546 U.S. 454 (2006) is
misplaced, as Palomino's comment, unlike the use of the term "boy" in a race discrimination
case, carried no historical weight of potential discriminatory animus.  Moreover, as Marquez'
alleged discomfort (Response to PSOF 115, 119) is based on inadmissible speculation Palomino
had propositioned her, these facts are equally unreasonable, inadmissible and irrelevant.  Further,
Palomino's comment was not based on sex and was a isolated remark no reasonable person

could conclude created a hostile or abusive work environment. Neither did the comment unreasonably interfere with Marquez' work performance. Certainly, the few minutes she expended in Palomino's office did not unreasonably interfere with her work. Lastly, he failure to report Palomino's comment strongly suggests she did not find it subjectively offensive or unwelcome. *Holmes v. State of Utah Dep't of Workforce Services, Inc.*, 483 F.3d 1057, 1064, 1065 (10th Cir. 2007).

Admissible evidence relating to Marquez' allegations about sexual harassment she witnessed also fails to meet the demanding Title VII "severe or pervasive" test. No reasonable person would find such conduct created a hostile or abusive work environment. Reply to SOF 65; Response to PSOF 116. There is no evidence the conduct was directed toward her due to her sex. *Stahl v. Sun Microsystems, Inc.,* 19 F.3d 533, 538 (10th Cir. 1994). Neither is there evidence it unreasonably interfered with her job performance. That she failed to report these incidents strongly suggests, again, that she was not subjectively offended.

Marquez' retaliation claim also fails. Plaintiffs have presented no admissible evidence Kastelic was aware of her complaints against Gonzales. *Petersen v. Utah Dep't of Corrections,* 301 F.3d 1182, 1189 (10th Cir. 2002) (summary judgment affirmed where plaintiff failed to provide evidence decision-maker knew of her protected activity and acted with a retaliatory motive); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993). Although she complains Kastelic treated her coldly after she had reported Gonzales' comments, she admits he "always treated [her] sort of coldly." Response to PSOF 117. Thus, his behavior toward her did not change.

Her complaint that Kastelic gave her two write-ups for improper "call off" (she does not dispute she improperly called off) and did not let her leave early one day also fail to show

retaliation.  Response to PSOF 117.  There is no evidence of any causal connection between her complaints about Gonzales and Kastelic's actions, or that she suffered any materially adverse action.  *Burlington Northern  & Santa Fe RR Co. v. White*, 548 U.S. 53, 68 (2006) (Title VII does not protect employees from all retaliation, but retaliation that causes injury or harm).  Kastelic's alleged coldness and single refusal to allow Marquez to leave work early fall into the category of petty slights, minor annoyances, and trivial harm categories.  *Id; Clegg,* 496 F.3d at 929; *Heno v. Sprint/United Mgt. Co.,* 208 F.3d 847, 857-858 ("chilly" treatment is not adverse action).

Marquez quit her job for higher pay elsewhere.  Response to SOF 68; Reply to SOF 71.  After quitting, she appealed the two write-ups and prevailed.   Response to SOF 68-69.  Therefore, the discipline caused her no significant harm.  *See Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1224 (10th. Cir. 2006) (discipline may be adverse employment action "only if it effects a significant change in plaintiff's employment status").  That others have made sexual harassment allegations against  Kastelic does not make it any more or less likely that he knew of Marquez' complaints against Gonzales or retaliated against her based on those complaints.  Marquez' convoluted assumption and speculation that Kastelic may have known about her complaints against Gonzales based on hearsay are inadmissible.  Reply Brief § III.C.1.a(4).  As Plaintiffs have presented no evidence Kastelic knew of the Gonzales complaints, no reasonable jury could speculate that he knew; neither could they find the requisite causal connection.

Based on the foregoing, CCA is entitled to summary judgment on Marquez' sexual harassment and retaliation claims.

2.     CCA Is Entitled to Summary Judgment on the Claims of Venisha Lopez

Despite her awareness of CCA's procedures for reporting sexual harassment (Response to SOF 73-74), Lopez never reported any of the alleged conduct (Responses to SOF 79-81, 84-86; Reply to SOF 76-78, 81-83, 87-88; Response to PSOF 180-181) to CCA. She testified, twice, that she never reported any complaints of sexual harassment to anyone at CCA. Reply to SOF 87. First, this strongly suggests she did not find the conduct subjectively offensive or unwelcome. *Holmes,* 483 F.3d at 1064, 1065. The record citations Plaintiffs provide for their assertion Lopez was offended by the conduct do not support the claimed facts. Response to PSOF 179; Reply to 77.

Second, Lopez' failure to take advantage of the reporting procedures she knew CCA had in place for claims of sexual harassment establishes both prongs of the *Ellerth-Faragher* defense. *Faragher* at 807; *Ellerth* at 765. Plaintiffs provide no record citation to support their assertion that Lopez was excused from reporting the alleged sexual harassment because "any complaints that [she] could have filed, would have been ignored." Response Brief at p. 140. Plaintiffs' suggestion that a jury could so speculate is baseless. Moreover, her belief CCA would not have listened to her is inadmissible. Reply Brief § III.C.1.a(7). Likewise, her desires are inadmissible. Reply Brief § III.C.1.a(9). There is no evidence CCA had actual or constructive knowledge of the alleged harassment. *Adler,* 144 F.3d at 673 ("An employer is only obligated to respond to harassment of which it is actually aware, or in the exercise of reasonable care could have known"); *Farley v. American Cast Iron Pipe*, 115 F.3d 1548, 1554 (11th Cir.1997) (employee is obligated to follow employer's reporting procedures). Lopez asserts no retaliation claim. Response to SOF 31.

Based on the foregoing, CCA is entitled to summary judgment on Lopez' sexual harassment claims.

3.     CCA Is Entitled to Summary Judgment on the Claims of Genevieve Luna

First, the claimed sexual harassment occurred while Luna worked for Dominion, rather than CCA, and is irrelevant to her claims against CCA directly.  Reply to PSOF 166-169, 171. Second, the record cited by Plaintiffs does not support  Luna's allegations about Deaver.  Reply to SOF 93.  She cannot recall whether anything she wrote in the logbook had anything to do with allegations of sexual harassment.  *Id.*  Third, the record Plaintiffs cite does not support the claimed fact that Capt. Candelaria "propositioned [Luna] for sex."  Reply to SOF 92.  Even assuming he had a running tease with Luna, twenty years his senior, about wanting to take her home, his comments cannot reasonably be interpreted as expressions of sexual desire or as based on sex.  Neither is there any evidence that his teasing unreasonably interfered with her job, or that any reasonable person could find it created a hostile or abusive work environment.

There is no evidence CCA had actual or constructive knowledge of the alleged comments.  She did not know what he meant by the comments, and did not report his comments. Response to SOF 92-93; Reply to SOF 92-93.  Despite reading and understanding CCA's Policy 3-17 (Response to SOF 91),  Luna never reported any alleged sexual harassment to CCA. Response to SOF 92-93; Reply to SOF 92-93.  This strongly suggests she did not find the comments subjectively offensive or unwelcome, and establishes the *Ellerth-Faragher* defense with regard to her claims against CCA.  Luna asserts no retaliation claim.  Response to SOF 31.

Based on the foregoing, CCA is entitled to summary judgment on  Luna's sexual harassment claims.

4.    <u>CCA Is Entitled to Summary Judgment on the Claims of Kathleen Robinson</u>

First, Robinson's sexual harassment allegation about a remark by an unidentified male CO, is inadmissible.   Response to PSOF 227; Reply Brief § III.C.1.a(21).   Even if deemed admissible, she reported the remark to the nursing director and never saw the CO who uttered it again.   Response to SOF 98-99.   As such, there was nothing further to investigate and no additional action to take.  Response to PSOF 231.  Her speculations about the nursing director's thoughts are inadmissible.   Reply Brief § III.C.1.a(22).   Her allegations about another nurse hiding in the infirmary are inadmissible.  Response to PSOF 230; Reply Brief III.C.1.a(23).

The male officer's comment was an isolated remark that falls into the "mere offensive comment" category and does not support a Title VII claim.  *See Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1542-1543 (10th Cir. 1995) (A single offensive comment does not violate Title VII).   A plaintiff must present evidence she was subjected to a "steady barrage of opprobrious sexual comments." *Id.*   Although she now complains inmates subsequently repeated the officer's comment, she never reported this to anyone at CCA because, based on her sixteen years of experience working in prisons, such comments by inmates were typical.  Response to PSOF 229.  As she never complained, CCA had no actual or constructive notice of the alleged inmate comments. Robinson does not allege retaliation.  Response to SOF 31.

Based on the foregoing, CCA is entitled to summary judgment on  Robinson's sexual harassment claims.

5.     CCA Is Entitled to Summary Judgment on the Claims of Balbina Tavarez

As Tavarez has now confirmed that she is not making any direct claims of sexual harassment or retaliation against CCA (Response to SOF 30; Response to PSOF 262, 269), CCA is entitled to summary judgment on such claims as a matter of law.

6.     CCA Is Entitled to Summary Judgment on the Claims of Marcia Manchego

Plaintiffs admit Manchego knew CCA policy (Policy 3-3) prohibited staff from having improper contacts with inmates, and that an employee's personal letter to an inmate violated the policy and could lead to immediate discharge.  Response to SOF 121.  Plaintiffs admit the contents of the letter in question, which was written to an inmate whose case Manchego had previously managed and included personal information about Manchego and her family members, most of which she admits was accurate.  Response to SOF 124-145.  Plaintiffs admit the letter stated CCCF was expecting "another batch" of prisoners from Wyoming.  Response to SOF 146.

Although Plaintiffs deny the letter contained confidential information relating to the prison (Response to SOF 123), that denial is not supported by Plaintiffs record citations.  It is difficult to imagine any prison information more confidential, and more important to keep from other inmates, than the anticipated movement of prisoners outside the confines of prison walls. Reply to SOF 123.  Moreover, Plaintiffs acknowledge that after being accused of writing the letter, Manchego "realized that she had shared information contained in that letter with other employees *and even with some inmates at CCCF*."  Response Brief at 152 (emphasis added). Sharing personal or confidential prison information with inmates is strictly prohibited by Policy 3-3.  Thus, Plaintiffs admit Manchego violated Policy 3-3, which is the stated reason for which

she was fired.  Response to SOF 121; Reply to SOF 123.

Manchego now alleges sexual harassment, yet never reported any instances of sexual harassment to CCA, despite her understanding CCA had a sexual harassment policy in place and that she should report any harassment to her supervisor, human resources or the warden. Response to SOF 120, 155-163.  Although she contends she did not report the alleged incidents because she "did not trust anybody at CCA," her contention is inadmissible (*see* Reply Brief § III.C.1(a)(11)) and, in any event, fails to excuse her decision not to report the incidents.  Her failure to report any of the alleged incidents strongly suggests she was not subjectively offended by them and did not find them unwelcome.  Moreover, the incidents she alleges (Response to SOF 155-161) are not based on sex and are too insignificant to constitute sexual harassment or create a hostile work environment, falling, instead, into the realm of stray remarks and teasing. *See Penry*, 155 F.3d. at 1261-1263; *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000); *Joiner*, 114F. Supp.2d at 408-409.  There is no evidence the alleged conduct unreasonably interfered with her job performance, or that CCA actually or constructively knew about it.  Thus, there is no basis for imposing liability against CCA for the alleged conduct and CCA is entitled to summary judgment as a matter of law on Manchego's sexual harassment claims.

Plaintiffs' reliance on *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 13-16 (1st Cir. 2002) and *Mack v. Otis Elevator Co.*, 326 F.3d 116, 120-122 (2d Cir. 2003), *cert. denied*, 540 U.S. 1016 (2003) is misplaced because, in both cases, unlike the facts in the instant case, all of the repeated harassment at issue was perpetrated either by the plaintiff's supervisor or the person in charge of the facility.  *Ocheltree v. Scallon Productions, Inc.*, 335 F.3d 325, 328-330 (4th Cir. 2003) is also distinguishable because it involved a "daily stream" of all male employees

engaging, in front of plaintiff, in sexual conduct with a mannequin, and comments about anal

sex, oral sex and homosexual sex. *Id.* Unlike Manchego, the plaintiff repeatedly complained,

following the company's stated procedures for reporting sexual harassment, but no action was

taken to stop the conduct. *Id.*

Manchego's retaliation claim also fails. Manchego never engaged in any activity

protected by Title VII. Title VII only protects employees who file discrimination charges with

the EEOC or oppose discrimination prohibited by the statute. 49 U.S.C. § 2000e-3 (a).

Manchego never complained of sexual harassment to anyone at CCA, and never filed an EEOC

charge or opposed discrimination before her discharge. Although Manchego authored two

memoranda on May 14, 2003, neither contains allegations or complaints of gender

discrimination, sexual harassment, or hostile work environment, and neither mentions retaliation

or the EEOC. Response to SOF 150-151. The memoranda simply addressed Warden Bridges'

criticism of Donna Como's handling of a hostile inmate. Response to SOF 150. No CCA

manager told her the memoranda led to her discharge (Response to SOF 154), and a review of

both memoranda (Ex. A-2F & A-35) quickly reveals that neither could reasonably be construed

as protected activity. Response to SOF 151. CCA cannot be liable for retaliation because it did

not know Manchego was opposing unlawful discrimination. *Petersen,* 301 F.3d. at 1188

(summary judgment on Title VII retaliation claim affirmed where plaintiff's memorandum

contained no reference to unlawful discrimination).

Even assuming *arguendo* the memoranda constituted protected activity, Manchego's

retaliation claims fails because there is no evidence of a causal link between the memoranda and

her discharge four months later. Although she claims she gave the memoranda to Como, she

never gave them to Warden Crouse, who made the decision to terminate her employment. Response to SOF 152.  She admits she does not know if Crouse knew of the memoranda when he discharged her.  Response to SOF 152.  Crouse testified he was unaware of the documents when he discharged her, and Plaintiffs have offered no evidence to the contrary.  Response to SOF 153.

Plaintiffs' reference to additional deposition testimony by Manchego (Ex. B-21 at 188:20-189:15), solely within the legal argument section of their Response Brief (at pp. 148), fails to comply with this court's rules for summary judgment motions. CPS at p. 11-12, ¶¶ 5, 7. Moreover, the cited testimony is inadmissible because it is hearsay (Fed. R. Evid. 801, 802), lacks foundation, lacks personal knowledge (Fed. R. Evid. 602), is speculation, and is unduly prejudicial (Fed. R. Evid. 403).  Even if deemed admissible, the claimed facts are not supported by the deposition testimony Plaintiffs cite.  Manchego testified only that Como told her that she [Como] provided Manchego's memoranda as evidence at Como's unemployment hearing, two weeks before Manchego was fired.  Ex. B-21 at 188:20-189:15.  Plaintiffs neglected to add that: (1)  Como advised Manchego that CCA did not attend the unemployment hearing and that she [Como] was the only person who attended the hearing; and (2) Manchego does not know if CCA ever received copies of the memoranda that had been provided at the hearing.  Ex. B-21 at 189:16-24.  Thus, the testimony is pure speculation which does not support any contention that Crouse received copies of the memoranda as a result of Como's unemployment hearing. Therefore, Plaintiffs' reliance on case law holding "a two-week gap is sufficient to establish a causal connection between protected activity and an adverse employment action" is misplaced. Response Brief at 148-149 (citing *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1156 (10th Cir. 2008)

and *Fye v. Oklahoma Corp.*, 516 F.3d 1217, 1227-28 (10th Cir. 2008)).  Moreover, as neither memoranda constituted protected activity, as addressed above, no retaliation in violation of Title VII could have occurred even if the warden had known of the memoranda before he discharged Manchego.

Manchego's sole evidence of pretext is that she denies writing the letter.  Response to SOF 148.  However, the relevant inquiry is not whether CCA's decision was wise, fair, or correct, but whether it honestly believed  Manchego wrote the letter and acted in good faith upon its belief.  *EEOC v. Total Systems Services, Inc.*, 221 F.3d 1171, 1170, 1176 (11th Cir. 2000).  An employer's personnel decisions may be based on a level of certainty that may be insufficient in a court.  *Id.* At 1176.  Here, CCA had sufficient reason to believe Manchego wrote the letter.  Much of the letter contained accurate information about her family.  Response to SOF 123-147; Reply to SOF 123, 147.  The letter gave an alternate address for the inmate to use as the return address on the envelope of letters he sent, so others would not see Manchego was receiving mail from an inmate.  Reply to SOF 147.  The inmate's move to a different facility does not alter the fact that, as a corrections officer, Manchego's open receipt of mail from an inmate whose case she had previously managed violated Policy 3-3 or, at the very least, demonstrated impropriety.  *Id*.  Whether the return address the letter suggested be used was real or not is inadmissible, as is Mr. Roseman's affidavit.  Reply Brief § III.C.1.a(10).  When Crouse asked her about the letter, she offered no explanation for how her personal family information came to be in it.  Response to SOF 148-149.  For these reasons, he did not believe her when she denied writing the letter.  Response to SOF 149.

In violation of this court's CPS, Plaintiffs' citations (Response Brief at pp. 149-151) to the

deposition testimonies of Encinias, Valdez and Crouse, and to Ex. B-66 (a handwriting analysis report), are not contained or referenced in Plaintiffs' fact statements or in Plaintiffs' responses to CCA's fact statements.  CPS at pp. 11-12, ¶¶ 4, 5, 7.  Instead, these claimed facts and citations appear for the first time in the legal argument section of Plaintiffs' Response Brief.  As such, CCA is unable to provide fact responses to this information in compliance with the court's rules. Accordingly, the court should not consider Plaintiffs' improperly cited testimony and exhibit.

Even if the court were to consider such evidence, it fails to create evidence of pretext. Plaintiffs have cited no case law that requires an employer to use criminal investigation techniques before terminating an employee.  Indeed, none of the cases relied upon by Plaintiffs requires this.  *Am Postal Workers Union v. U.S. Postal Service*, 830 F.2d 294, 311 (D.C. Cir. 1987); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1998); *Whalen v. United Airlines*, 972 F.2d 357 (10th Cir. 1992).  Thus, Plaintiffs' argument that CCA could not discharge Manchego absent a formal handwriting analysis or fingerprinting analysis is specious.  Similarly, Plaintiffs have cited no legal authority for their assertion CCA was required to "obtain an opinion definitively identifying Manchego as the author" of the letter before it could discharge her.  Moreover, as Plaintiffs contend CCA's investigator solicited and obtained an informal handwriting analysis of the letter prior to Manchego's discharge, their subsequent contention that CCA "fail[ed] to conduct even the most rudimentary of investigations" is undermined by their own arguments.  Response Brief at 150, 154.

Plaintiffs' contention Manchego was treated differently than other *female* employees who were discharged for violating Policy 3-3 fails to create any evidence that Manchego was discriminated or retaliated against because of her sex.  As Plaintiffs have pointed to no male

employees who engaged in improper contacts with inmates and were not fired for doing so, they

have failed to demonstrate a disparity between CCA's treatment of men and women for engaging

in improper inmate contacts. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998).

Plaintiffs have presented no evidence that any of the other women discharged for

violating Policy 3-3 had engaged in activities protected by Title VII, or were discharged in

retaliation for engaging in such activities. This court should reject Plaintiffs' effort to interject

into this case the facts associated with the discharges of ten other female employees. Reply to

PSOF 32-42. All such evidence is inadmissible because it is irrelevant, speculative, hearsay

(Fed. R. Evid. 801, 802), and unduly prejudicial (Fed. R. Evid. 403). The only relevant fact is

that CCA has consistently enforced its policy against improper inmate contacts by terminating

the offending employees. Response to SOF 122; Reply to SOF 122. In fact, in five other cases,

CCA fired employees for corresponding with inmates. Response to SOF 121-122; Reply to SOF

121-122. There simply is no evidence of pretext.

As Plaintiffs have presented no evidence that Manchego engaged in any protected

activity, or was discharged in retaliation for engaging such activity, or that CCA's stated reason

for her discharge was a pretext for discrimination, CCA is entitled to summary judgment as a

matter of law on her retaliation claim.

     7.    <u>CCA Is Entitled to Summary Judgment on the Claims of Christine Newland</u>

Newland does not accuse CCA of sexually harassing her. Response to SOF 30, 179.

Rather, she claims that by suspending her and "misinterpreting her conduct as a resignation,"

Crouse retaliated against her for an EEOC charge she had filed against Dominion six months

earlier. Response to SOF 174-175, 180. CCA is entitled to summary judgment on Newland's

retaliation claim because her July 26, 2004, EEOC charge against CCA was untimely.  *See* Response to SOF 174; Ex. A-22, p.1; 42 U.S.C. § 2000e-5 (e) (1); *Nat'l RR Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002); *Montes v. Vail Clinic, Inc.,* 497 F.3d 1160, 1163 (10th Cir. 2007).  Having failed to file a timely charge of discrimination, Plaintiffs seek to "piggyback" Newland's retaliation claim against CCA.[11]  Assuming *arguendo* Manchego's charge was timely filed,  Plaintiffs reliance on the "single filing" or "piggybacking" rule is misplaced.  The "piggybacking" rule applies only if "the EEOC and the company are aware of the nature and scope of the allegations."  *EEOC v. Outback Steakhouse*, 245 F.R.D. 657, 660 (D. Colo. 2007).  For the "piggybacking" rule to apply, Newland must allege similar discrimination by the same actor, during the same time frame as those who actually filed timely charges of discrimination against the company.  Id.

Plaintiffs' reliance on *Foster v. Rohrpumpen*, 365 F.3d 1191(10th Cir. 2004) is misplaced.  The case is distinguishable because it involved a group of twenty-six employees, all of whom had been laid off when the employer company changed hands.  *Id*. at 1191-1193.  In applying the "piggybacking" rule, the court specifically relied upon the fact that:

> [T]he plaintiffs' unexhausted claims stem from the same conduct as the filed charges.  In fact, as noted, this case is practically identical to the situation that the *Horton* court used as an example when single filing is most appropriate.  *See Horton*, 343 F.3d at 899 ("If for example the employer has fired every worker over the age of 40 and one of them has filed a timely charge, he can guess that others will, and there is no need to flood the EEOC with identical charges.").

*Id*. at 1198.

---

[11] Plaintiffs provide no record citation to support their assertion Manchego's charge of discrimination against CCA was timely filed.  Response Brief at p. 157.

Here, Newland's retaliation claim did not stem from Manchego's charge of discrimination, and Manchego's charge did not place CCA on notice that Newland would also file a retaliation charge of discrimination. Manchego's retaliation claim against CCA, alleges she was terminated on September 19, 2003, for violating Policy 3-3 (improper inmate contacts), in retaliation for having opposed discrimination against another CCA employee, Donna Como, while she worked at Dominion. Response Brief at 151-157. In contrast, Newland's retaliation claim alleges that by "misinterpreting her conduct as a resignation," CCA retaliated against her for her prior EEOC charge against Dominion and the sexual harassment complaints she made while she worked for Dominion. Response to SOF 180. Whereas Manchego alleges she was fired, Newland asserts she was not allowed to retract her May 28, 2003, resignation.

CCA did not fire Newland. Rather, CCA suspended her for five days, after which she quit in a huff, leaving her badge and related work items behind. Response to SOF 167-171; Reply to SOF 170-171. Two days later, Newland called the warden and told him she had not quit, but was just upset. Response to SOF 172. The warden did not allow her to rescind her resignation. SOF 173; Response to SOF 173. Thus, the nature and scope of Newland's retaliation claim against CCA differ sharply from the nature and scope of Manchego's retaliation claim against CCA. In addition, the retaliation claimed by Newland occurred at a different time frame, four months before the retaliation alleged by Manchego. Accordingly, Manchego's retaliation claim did not place CCA on notice of the nature and scope of Newland's allegations. As such, the "piggybacking" rule does not apply. *Outback,* 245 F.R.D. at 660.

*EEOC v. Albertson's LLC*, 247 F.R.D. 638, 642-643 (D. Colo. 2007) is also inapplicable to the facts of the instant case. In *Albertson's*, an EEOC pattern or practice race discrimination

hostile work environment case, several claimants moved to intervene.  Each intervenor asserted identical claims, *i.e.*, the rampant use of racial epithets (including numerous variants of the "N" word coupled with such words as kill, f---ing, and dead; the words "wetbacks," "lazy Mexicans," and other variants on that theme); and the display of swastikas and drawings of guns and nooses being used on minorities.  *Id*. at 641-642.  The court applied the single filing rule, but nonetheless excluded specific claims that were not similar to those of the claimant who had filed a timely charge of discrimination.  *Id*. at 644.  Specifically, the court excluded one claimant's wrongful discharge claim, concluding it did not arise out of similar discriminatory treatment.  *Id*. The court concluded: "To the contrary, these [wrongful discharge claims] are highly individualized claims based on a specific incident of an alleged non-physical altercation between Adams and another employee."  *Id*.   Similarly, in this case,  Newland's highly individualized retaliation claim arises from a specific incident in which she quit in a huff after having been suspended for five days and was unable to persuade the warden, two days later, to allow her to retract her resignation.  Her claim bears no resemblance to Manchego's retaliation claim.

Assuming *arguendo* the "piggybacking" rule applies to  Newland's right to intervene or become a class member, the rule only permits her to join this case as an intervenor or class member.  *Outback*, 245 F.R.D. at 659-660; *Foster v. Rohrpumpen*, 365 F.3d 1191, 1197-1198 (10th Cir. 2004); *EEOC,* 247 F.R.D. at 642-643.  The "piggybacking" rule does not permit an intervenor or class member to bring a private claim for pattern or practice discrimination; only the EEOC may bring a pattern or practice claim of discrimination.  *Bacon v. Honda of America Manufacturing, Inc*., 370 F.3d 565, 575 (6th Cir. 2004); *Burlington Medical*, 536 F.Supp.2d at 655.

The document  Newland filed with the EEOC, dated March 2, 2004, also does not qualify as a charge of discrimination.   At a minimum, to be a charge, a written statement must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."   *See* 29 C.F.R. § 1601.12 (b); *see also Foster v. Ruhrpumpen, Inc*., 365 F.3d 1191, 1195-96 (10th Cir. 2004).   In addition, it must ask the EEOC to take remedial action. *Federal Express Corp. v. Holowecki*, __ U.S. __ , 128 S.Ct. 1147, 1159-1160  (2008).

Although CCA does not dispute  Newland submitted a one page, typewritten sheet to the EEOC on or about March 2, 2003, the sheet, titled "Incidents," merely contains dates, with cryptic notes next to them.   Ex.A-22, p. 4.   Significantly, the sheet makes no mention of any claim of retaliation, which is  Newland's sole claim against CCA in this case.   Ex. A-22, p.4. The sheet does not ask the EEOC to take any remedial action and does not identify the charging party, or specifically identify the respondent party.   *Id*.   Neither can the sheet be reasonably construed as a request that the EEOC take remedial action.   In particular, the sheet cannot be construed as a request for the EEOC to take action to remedy any claimed retaliation, as the sheet fails to mention or generally describe any protected activity or any claim of retaliation.   *Id*.   The sheet mentions Newland's suspension and alleged discharge, but no other facts that remotely suggest either was due to protected activity or retaliation for protected activity.   *Id*.   Neither does the sheet provide CCA with notice of any company-wide allegations of retaliation.[12]   Thus, the sheet utterly fails to meet Title VII's filing criteria for a charge of discrimination.

Plaintiffs' reliance on *Holowecki* is misplaced.   There, the plaintiff submitted a completed

---

[12] CCA did not receive the sheet until November 24, 2004, two days after the EEOC transmitted it with a letter dated November 22, 2004.  Ex. A-22, pp.3-4.

Intake Questionnaire to the EEOC, accompanied by a signed, six-page affidavit describing the alleged discrimination in further detail. *Holowecki*, 128 S.Ct. at 1152, 1154. The Court held an Intake Questionnaire *may* satisfy the requirement to file a charge of discrimination *if* it contains sufficient information to constitute a request for the EEOC to take remedial action. *Id*. at 1159. The Court relied heavily on the fact that "the completed questionnaire…was supplemented with a detailed six-page affidavit. At the end of the last page, respondent asks the agency to '[p]lease force Federal Express to end their age discrimination.'" *Id*. at 1160. The Court specifically noted, "Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action." *Id*. at 1159.

Here, unlike the facts in *Holowecki*, Newland did not submit a completed Intake Questionnaire. She did not submit a signed affidavit detailing her discrimination claims. She did not request that the EEOC take action. Thus, her one-page sheet does not meet the requirements necessary to constitute a charge of discrimination. *Id*.

Plaintiffs' contention that the EEOC investigator's letter transforms Newland's deficient, one-page sheet into a charge of discrimination is not supported by the Court's decision in *Holowecki*. In *Holowecki*, the Court discussed the agency's interpretation of the documents submitted as one factor to be considered, but did not, as Plaintiffs contend, discard all filing requirements in favor of the EEOC's ad hoc determination that a document is or is not legally sufficient to constitute a charge of discrimination. In fact, Plaintiffs' argument is precisely that used by the dissent in expressing concern that the Court's ruling might be interpreted to hold that a charge of discrimination "is whatever the [EEOC] says it is." *Id*. at 1161. Based on the foregoing, CCA is entitled to summary judgment as a matter of law on Newland's retaliation

claim, as she failed to file a timely charge of discrimination, thus failing to exhaust her administrative remedies.

Assuming *arguendo* Newland filed a timely charge, CCA is entitled to summary judgment on her retaliation claim because there is no evidence of a causal link between her EEOC charge against Dominion in October 2002, and her CCA suspension and alleged discharge over six months later, and no evidence of pretext. There is no evidence Newland's charge against Dominion had any impact on the warden's decision to suspend her or "misinterpret" her conduct as a resignation, let alone that it was a determinative factor. *Piercy v. Maketa,* 480 F.3d 1192, 1201 (10th Cir. 2007). Neither is there evidence that CCA's reasons for suspending Newland or concluding she quit are so weak, implausible, inconsistent, incoherent, or contradictory that a reasonable jury could find them unworthy of belief. Two employee statements (Brook's and Pruitt's) support CCA's conclusion Newland made the offensive statements to Brooks. (Exs. A-2G and A-2H), and Flores' memo supports CCA's conclusion she quit (Ex. A-36A). There is no evidence that on May 28, 2003, Crouse did not honestly believe she violated Policy 3-17 and quit, or that he did not act in good faith on his beliefs. Plaintiffs' contention, unsupported by any record citations, that Crouse "could not have acted in good faith in refusing to allow Newland to return to work" because she had not missed any scheduled work (Response Brief at 161), is pure, inadmissible speculation. Whether CCA was mistaken or made a bad decision is insufficient to show its reason is unworthy of belief. *Swackhammer,* 493 F.3d at 1169-70. Accordingly, CCA is entitled to summary judgment as a matter of law on Newland's retaliation claim.

D.    CCA Is Entitled to Summary Judgment on Punitive Damages Claims

To recover punitive damages, Plaintiffs must prove CCA acted with "malice or with reckless indifference to [the class members'] federally protected rights."  42 U.S.C. § 1981(a)(b)(1); *Kolstad v. American Dental Assn*., 527 U.S. 526, 535, 544-545 (1999).  The terms "malice" or "reckless indifference" focus on the *employer's* state of mind and "pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."   *Kolstad* at 534-535.Whether sufficient evidence exists to support punitive damages is a question of law.  *McInnis v. Fairfield Communities, Inc*., 458 F.3d 1129, 1136 (10th Cir. 2006); *EEOC v. Wal-Mart Stores, Inc*., 187 F.3d 1241, 1243-1244, 1246-1247 (10th Cir. 1999).  Contrary to Plaintiffs' assertion, *Baty v. Willamette Ind*., 172 F.3d 1232, 1244-1245 (10th Cir. 1999) does not hold that recklessness and malice "are to be inferred."  Rather, it simply upheld a jury verdict awarding punitive damages where the evidence showed the plaintiff had continually reported harassment and the employer's only response was a sham investigation.  *Id*.

The justification for exemplary damages "lies in the evil intent of the defendant," and "a positive element of conscious wrongdoing is always required.'"  *Id*. at 537; *see Wal-Mart*, 187 F.3d at 1243-1244, 1246-1247 (upholding award of punitive damages in ADA case where evidence showed Wal-Mart's decision-maker, who was familiar with the accommodation requirements of the ADA, knew plaintiff had a hearing impairment and required closed-captioning and an interpreter, yet refused to provide either; after plaintiff complained, his direct supervisor and the store manager demoted him, then suspended him and ultimately fired him); *EEOC v. Outback*, at * 9 (stating "the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant.").  Thus, "holding employers liable for punitive

damages when they engage in good faith efforts to comply with Title VII" is at odds with "the very principles underlying the common law limitations on vicarious liability for punitive damages," which deem it "improper" to award punitive damages "against one who is himself personally innocent." *Kolstad,* at 544. This is why awards of punitive damages cannot be based on successor liability. As the Seventh Circuit has noted:

> The purpose of the [successor liability] doctrine is to ensure that an employee is made "whole" . . . Punitive damages--which are generally imposed to punish the actual wrongdoer and to deter him from acting illegally again--or compensatory damages--which are imposed to provide relief for the collateral, not merely job-related, effects of discrimination--go far beyond this purpose….[T]he key [to the successor doctrine is to balance the interests of two innocent parties to achieve a clearly established national goal. That national goal is not better achieved by imposing punitive or compensatory damages on an innocent successor… .

*Musikiwamba v. Essi, Inc*., 760 F.2d 740, 749 (7th Cir. 1985).

> *Under no circumstances* can this court envision the imposition of punitive damages liability against an innocent successor. The conflicting interests of the parties and policies justifying successor liability and punitive damages all militate in favor of the successor company on such a claim.

*Armstrong v. Lockheed Martin Beryllium Corp*., 990 F.Supp. 13951404 (M.D. Fla. 1997) (emphasis added).

Plaintiffs rely on two district court cases from other jurisdictions to support their contention that punitive damages may be based on successor liability. Response Brief at n. 3. This reliance is misplaced, as both cases are inapposite. In *EEOC v. SWP, Inc*., 153 F.Supp.2d 911 (N.D. Ind. 2001), the judge recommended imposition of punitive damages *against SWP's* successor company where, *after judgment had been awarded* against SWP and in favor of the EEOC, SWP "devised a plan to sell all of SWP's assets to [another company] through a friendly foreclosure proceeding;" after the foreclosure, the successor company accepted all SWP debts

except the sexual harassment judgment.  *Id*. at 914, 926.  SWP and its successor company also shared the same shareholders, all of whom knew of the judgment before the foreclosure sale and "structured and planned the transaction so that SWP could pay the debts necessary to continue the business, but would have nothing left to pay the judgment."  *Id*. at 926.  Similarly, in *EEOC v. Premier Operator Services*, 113 F.Supp.2d 1066 (N.D. Tex. 2000), the defendant's company president, fully aware of the EEOC's lawsuit, expressed the "intent to fraudulently transfer defendant's assets in an effort to evade liability in the EEOC's lawsuit."  *Id*. at 1073.  The court expressly noted that the company's president had "shown a pattern of disregard for the role of the EEOC or the federal government."  *Id*.  *Premier* is also distinguishable because it did not actually involve any successor liability claims.  Id. At 1068, 1073.

No such facts exist in the case at hand.  To the contrary, CCA completed its purchase of the prison before the EEOC elected to pursue the claims at issue in this case, before the class members came forward to assert their individual claims as class members or intervenors, and long before any judgment will be rendered.  Reply Brief § IIIA.  Thus, neither CCA nor the prior owner of the prison had knowledge of this case before the sale had been consummated.  Neither is there evidence the prison's prior owners sold the prison to avoid potential liability, or that CCA and the prior owners share common shareholders.  Accordingly, punitive damages cannot be awarded against CCA based on successor liability.

Nor are punitive damages available against CCA based on its own conduct after it took over the prison.  "[A]n employer may not be vicariously liable for punitive damages for the discriminatory decisions of managerial agents where these decisions are contrary to the employer's "good faith efforts to comply with [federal anti-discrimination laws]."  *Id*. at 545;

*Wal-Mart* at 1248.  "[T]he extent to which an employer has adopted anti-discrimination policies and educated its employees about the requirements of the [federal anti-discrimination law] is important in deciding whether it is insulated from vicarious punitive liability."  *Wal-Mart* at 1248.  "The proper question is whether the employer engaged in the conduct alleged with the 'knowledge that it may be acting in violation of federal law.'" *Outback* at * 9.  "[A]n employer must at least discriminate in the face of a perceived risk that its action will violate federal law to be liable in punitive damages."  *Id.* (citing *Kolstad*); *see, e.g. Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 118 (3rd Cir. 1999) (where court rejected *Faragher-Ellerth* defense because evidence showed employer never implemented its sexual harassment policy or investigated complaints of sexual harassment, despite clear knowledge failure to do so violated federal law).

    1.    <u>CCA Meets Requirements of *Kolstad's* Good Faith Compliance Standard</u>.

CCA meets all three requirements of *Kolstad's* good faith compliance standard to avoid vicarious liability for punitive damages:

> [A]n employer must at least 1) adopt antidiscrimination policies; 2) make a *good faith effort* to educate its employees about these policies and the statutory prohibitions; and 3) make *good faith efforts* to enforce an antidiscrimination policy.

*McInnis,* 458 F.3d at 1138 (emphasis added); *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1210 (10th Cir. 2000); *Ferguson v. Associated Wholesale Grocers, Inc.*, 469 F. Supp. 2d 961, 972 (D. Kan. 2007).

    a.    <u>CCA Adopted Anti-Discrimination Policies</u>

Plaintiffs do not dispute CCA's good faith effort to comply with Title VII by adopting a written policy, Policy 3-17, prohibiting sexual harassment and retaliation.  Response Brief at 167-68.  Thus, it is undisputed that CCA meets the first requirement of *Kolstad's* good faith

compliance standard.  *Kolstad*, at 544 ("The existence of a written policy instituted in good faith has operated as a total bar to employer liability for punitive damages" and "the institution of a written sexual harassment policy goes a long way towards dispelling any claim about the employer's 'reckless' or 'malicious' state of mind."); *Ferguson*, 469 F.Supp.2d at 972 (employer's uncontroverted evidence that it maintained a written policy against discrimination and retaliation satisfied first *Kolstad* prong); *see also Hardman v. Autozone, Inc*., 2007 U.S.App. LEXIS 6529, *10-11 (10th Cir. Jan. 25, 2007) (*Kolstad* defense applicable where employer presented ample evidence it adopted anti-discrimination policy).

      b.    <u>CCA Made Good Faith Efforts to Educate Employees About Policy 3-17</u>.

Plaintiffs do not dispute CCA educated employees on the sexual harassment policy. Rather, Plaintiffs contend that not all CCA employees were educated about the policy, citing only two class members, Pam Pearce and Catheryn Watkins, who claim they did not receive copies of the sexual harassment policy.  Response Brief at p. 165 (PSOF 212, 321).  However, both of these class members saw and read the policy, signed acknowledgments they had read and understood it, and admit they understood it was CCA's policy to prohibit sexual harassment in the workplace and that any complaints of sexual harassment at CCA should be reported. Response to PSOF 212, 321.  Moreover, contrary to Plaintiffs' contention, Pearce *did* receive a copy of the sexual harassment policy.  Response to PSOF 212.  That the HR manager read the policy aloud to employees before they signed the acknowledgments simply provides further evidence of CCA's good faith efforts to educate its employees about the policy.  Response Brief at 165; Response to PSOF 333.

Plaintiffs contend that not all employees at CCA received sexual harassment training. Alvord, Richardson and Salas never worked for CCA, which explains why they never received any sexual harassment training from CCA.  Response to SOF 37; Reply to SOF 37; Response to PSOF 318, 320.   As Cordova worked for CCA for less than two months, her recollection of receiving sexual harassment training twice demonstrates good faith training efforts.   Response to PSOF 316.   CCA also distributed "Warden's Daily Reminders" cards to employees, which emphasized that sexual harassment would not be tolerated.   Reply to SOF 39.    That one employee, Tavarez, does not recall receiving specific training on the reminder cards is of no consequence, especially as she was discharge in April 2003.  Ex. A-2A; Reply to SOF 53.  That Watkins recalls her sexual harassment training lasted for one-half hour is irrelevant.   The important point is that she received sexual harassment training at CCA, and also saw and read CCA's sexual harassment policy.  Response to PSOF 319, 321; *see also Wal-Mart*, 187 F.3d at 1249 (upholding vicarious liability for punitive damages because the employer made *no* good faith efforts to educate its employees about the ADA's reasonable accommodation requirements).

Plaintiffs have cited no legal authority that requires an employer's trainer to be an expert on sexual harassment law or to have read Title VII in its entirety.  Neither have Plaintiffs cited any legal authority that requires an employer's investigators to have special training relating to the investigation of sexual harassment complaints.   Indeed, *Kolstad* and its progeny require only that an employer make *good faith* efforts to educate its employees about its sexual harassment policy and to investigate complaints of sexual harassment.  *Kolstad* at 545; *Wal-Mart* at 1248; *McInnis* at 1138.

Nonetheless, Plaintiffs seek to avoid the "good faith effort" training prong of the *Kolstad* defense by disputing the quality of the sexual harassment training CCA provided, relying heavily on testimony by CCA's trainer, Phyllis Canderleria.[13]  However, such testimony is inadmissible because it is irrelevant (Fed. R. Evid. 401, 402), speculative, lacks foundation, is in response to hypothetical questions calling for opinions from a lay witness (Fed. R. Evid. 701, 702), calls for legal conclusions or other expert opinion from a witness who has not been qualified as an expert (Fed. R. Evid. 702-705), and is unduly prejudicial (Fed. R. Evid. 403).

Candelaria is a trainer.  For many years, she has conducted training classes in which she covers sexual harassment training.  Ex. A-39 at ¶ 2.  She has personally attended and completed sexual harassment training, both at Dominion and at CCA.  *Id.* at ¶ 3; Response to PSOF 287. Since becoming a CCA trainer, she has used PowerPoint slides provided by CCA's corporate office, as well as CCA's sexual harassment policy, Policy 3-17.  Ex. A-39 at ¶ 4.  That CCA has not altered the slide presentation Candelaria uses is irrelevant.  Response to PSOF 292. Although Candelaria does training on CCA's sexual harassment policy, she does not do training on CCA's equal employment opportunity policy, as that is handled through human resources. Response to PSOF 293; Ex. A-39 at ¶ 5.  She responds to questions that are actually asked at the training sessions, if she knows the answer.  Ex. A-39 at ¶ 6.  If she does not know the answer to a question that is asked, she seeks assistance from CCA's corporate human resources department in order to respond correctly.  Ex. A-39 at ¶ 6.  She has not been involved in this lawsuit, other than her deposition, as she is not responsible for handling litigation matters for CCA.  Ex. A-39 at ¶ 7.

---

[13]  Further, Plaintiffs record citations are inaccurate with regard to their assertion that "CCF managers know that sexual harassment violates federal law."  *See* Response to PSOF 285.

She is not, and does not consider herself to be, an expert on sexual harassment or sexual harassment law. Ex. A-39 at ¶ 8.

Candelaria understands that sexual harassment requires that the actions or comments alleged are unwelcome. Ex. A-39 at ¶ 9. It is her practice, when confronted with a complaint of sexual harassment or retaliation, first to try to obtain as much information as possible from the complaining party. Ex. A-39 at ¶ 10. After doing so, she then makes a determination about whether the facts alleged should be reported to the warden under Policy 3-17 as potential violations of Policy 3-17. Ex. A-39 at ¶ 11. She does not consider *allegations* of sexual harassment or retaliation to *be* sexual harassment or retaliation under CCA's Policy 3-17. Ex. A-39 at ¶ 12. Until an investigation has been completed and a determination has been made as a result of that investigation, she cannot determine whether any violations of Policy 3-17 have occurred. Ex. A-39 at ¶ 12. In other words, she does not prejudge the complaints that are raised and does not presume that allegations made will be substantiated as a result of investigation. Ex. A-39 at ¶ 13. Candelaria cannot speculate as to whether any violation of Policy 3-17 constitutes a violation of Title VII, as she is not an attorney. Ex. A-39 at ¶ 14. Moreover, Candelaria does not investigate sexual harassment complaints, as that is not her job, and does nor render reports as to whether violations of Policy 3-17 have occurred. Ex. A-39 at ¶ 15.

Despite these facts, Plaintiffs' counsel asked Candelaria numerous hypothetical questions during her deposition about what she *would have done if* certain questions had been asked during a training class or if certain issues had arisen outside the class. These questions began or ended with a query as to whether the hypothetical offered "would be sexual harassment or violate Title VII," "would violate CCA's sexual harassment policy," or "would need to be reported to the

warden."  Response to PSOF 310-314, 329, 336, 337.  Plaintiffs' hypothetical questions asked

Candelaria, based solely on the limited allegations stated in hypothetical questions, to: (a) draw

legal conclusions that sexual harassment in violation of Title VII had occurred; (b) draw

conclusions as a purported expert on sexual harassment and sexual harassment investigations that

Policy 3-17 had been violated; (c) speculate as to what she would have done regarding a fact

scenario that never occurred; and/or (d) speculate as to whether hypothetical allegations had to

be reported.  *Id.*

 All such questions and the responses given, over objections lodged by CCA's counsel, are

inadmissible because they are irrelevant, lack foundation, are speculative, constitute expert

testimony by a lay witness, constitute legal conclusions or other expert opinion by a witness not

qualified as an expert, and/or are unduly prejudicial.[14]   Accordingly, CCA's objections to these

questions should be sustained and the court should not consider Candelaria's inadmissible

responses.    However, even if deemed admissible, Candelaria's testimony is readily

distinguishable from that of the trainer in the *Cadena* case, upon which Plaintiffs rely.   In

*Cadena*, the employer's sexual harassment trainer testified that a male supervisor's exposure of

his genitals to a female subordinate *could not be sexual harassment "so long as he apologized*

*after the incident."  Cadena*, 224 F.3d at 1210 (emphasis added).  Here, Plaintiffs have presented

no evidence that CCA's trainer so testified.

 CCA's objections to similar hypothetical questions asked of Encinias (Response to PSOF

341) should also be sustained and the court should not consider her responses.  Further, Plaintiffs

---

[14] CCA objected to the form of each such question.  The legal grounds for objection include relevance (Fed. R. Evid. 401, 402), speculation, lack of foundation, calls for opinion testimony from a lay witness (Fed. R. Evid. 602), calls for legal conclusions or other expert testimony from a witness who has not been qualified as an expert (Fed. R. Evid. 702-705), and unduly prejudicial (Fed. R. Evid. 403).

misstate Crouse's testimony regarding Candelaria's qualifications to serve as sexual harassment trainer (Response to PSOF 306), and grossly misstate the testimony of Candelaria, Flores and Kastelic in response to questions about the viewing of pornography at CCCF (Reply to PSOF 337-340).

Lastly, Plaintiffs cite no legal authority to support their contention (Response Brief at p. 168) that CCA's investigators were required to have specialized training on how to conduct sexual harassment investigations. CCA investigators have ample investigation experience to qualify them to investigate allegations of sexual harassment. Reply to PSOF 288, 289.

Plaintiffs have presented no evidence that CCA's efforts to train its employees on the sexual harassment policy were made in bad faith. CCA's good faith efforts to train its employees about its sexual harassment policy satisfy the second requirement of *Kolstad's* good faith compliance standard.

### c. CCA Made Good Faith Efforts to Enforce Its Policies

Plaintiffs do not dispute that CCA enforced its sexual harassment policy by conducting over 29 sexual harassment investigations, which resulted in terminations and disciplinary actions. Response to SOF 46-52; Reply to SOF 46-52. Rather, Plaintiffs contend that not all complaints of sexual harassment were investigated, citing one complaint that was not investigated, four allegations that are not listed on an investigation summary log, and one investigation report that could not be located. Reply to SOF 46. Once again, *Kolstad* requires good faith, not perfection.

Plaintiffs have presented no evidence that CCA's efforts to enforce its sexual harassment policy were made in bad faith. Undisputed evidence of an employer's good faith efforts to

enforce its anti-discrimination policies bars an award of punitive damages. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1189-1190 (10th Cir. 2007) (upholding the trial court's order vacating punitive damages award); *Ferguson*, 468 F.Supp. 2d at 972-973 (granting employer's motion for summary judgment on punitive damages claim); *Hardman*, 2007 U.S.App. LEXIS 6529 at *11-12 (holding *Kolstad* defense applicable where employer presents ample evidence of good faith enforcement efforts). "When an employer promptly and conscientiously responds to complaints of harassment or discrimination with good faith efforts, punitive damages are not warranted." *Kolstad*, at 545-546; *see also Dominic v. DeVilbiss Air Power Co*., 2007 U.S.App. LEXIS 17241, *14, 20-21 (8th Cir. Apr. 10, 2007) (reversing jury's punitive damages award based on lack of sufficient evidence of employer's malice or reckless indifference). A "scintilla of evidence" is insufficient to satisfy Title VII's high standard to qualify for a punitive damages award. *Id*.

Plaintiffs also do not dispute that, soon after it took over the prison, CCA launched a broad investigation into employee allegations that a "clique" among security staff abused their authority and engaged in sexual harassment during the Dominion era. Response to SOF 53; Reply to SOF 53. They do not dispute that, following this investigation, CCA discharged the chief of security, two captains, the training director, and a sergeant. *Id*. Rather, they complain that these discharges were ineffective enforcement because the fired employees were not specifically terminated for violating Policy 3-17. Termination is the most extreme remedy available to an employer. Moreover, as termination permanently renders the alleged sexual harasser unable to engage in further conduct, of any sort, in the workplace, termination is the most effective way to end alleged harassment. Plaintiffs' arguments to the contrary are baseless.

Plaintiffs provide no relevant record citations to support their assertion that "[m]anagers did not enforce the policies and complaints went unaddressed."  Response Brief at p. 169.  Plaintiffs then rely on irrelevant incidents that allegedly occurred at Dominion, rather than CCA (Reply to PSOF 202-207, 236, 121, 268, 223-224, 250); and inaccurately cited incidents that fail to show complaints were not investigated (Reply to PSOF 228, 231, 165; Reply to SOF 93).  The only remaining incidents Plaintiffs cite pertain to two class members, Watkins and Cordova, as to whose claims CCA does not seek summary judgment.  Moreover, Plaintiffs have inaccurately recited these facts, as well.  *See also* Reply to PSOF 144-145; 272, 276-279, 280.

Plaintiffs have presented no evidence that CCA's efforts to enforce its sexual harassment policy were made in bad faith and CCA's good faith efforts to enforce the policy satisfy the second requirement of *Kolstad's* good faith compliance standard.  Accordingly, CCA is entitled to judgment as a matter of law on Plaintiffs' claims for punitive damages based on vicarious liability.

2.    No Evidence of Direct Liability for Punitive Damages.

An employer may not be held directly liable for punitive damages unless the employee taking the relevant employment action is "sufficiently highly ranked." *McInnis*, 458 F.3d at 1137-1138; *LeVelle v. Penske Logistics*, 2006 U.S.App. LEXIS 20703, *21-22 (10th Cir. Aug. 11, 2006); *Deters v. Equifax Credit Information Services, Inc.*, 202 F.3d 1262, 1267, 1269-1270 (10th Cir. 2000).  Recklessness and malice cannot be inferred to the employer unless a manager responsible for setting or enforcing policy in the area of discrimination fails to respond to complaints, despite knowledge of serious harassment.  *Deters*, 202 F.3d at 1269.  To determine whether supervisors who engaged in alleged conduct occupied managerial positions, the court

- 94 -

must consider the type of authority they held and the discretion they had to make the decisions that they made. *Wal-Mart* at 1247.

Plaintiffs argue, without any supporting citations to the record, that individuals accused of sexual harassment in this case "include Sergeants, Captains, Lieutenants, the Chiefs of Security and Assistant Wardens." Response Brief at 162. As addressed above, several alleged perpetrators never even worked for CCA; many class members never worked for CCA; and numerous incidents of sexual harassment allegedly occurred while class members were employed at Dominion, not CCA. Plaintiffs have failed to present admissible evidence showing alleged perpetrators had policy-making or policy-enforcing authority or failed to respond to reports of serious sexual harassment. Plaintiffs' sole example of an alleged failure to respond to reports of harassment relates to the fact that Watkins' sexual harassment complaint was not investigated further after she resigned on the day she reported the harassment.[15] Response Brief at p. 172. Again, perfection is not required, only good faith efforts. Even assuming *arguendo* Watkins' highly individualized claims were deemed sufficient to support the survival of her individual eligibility for punitive damages, that individual eligibility does not bestow punitive damages eligibility upon the remaining members of the class.

---

[15] CCA does not dispute that the sexual harassment complaint reported by class member Watkins to Selman was not investigated further after she resigned her position. Reply to PSOF 324-328. This was an error but does not show malice or bad faith.

Viewing the admissible facts in the light most favorable to Plaintiffs, there is no basis for an award of punitive damages against CCA, based on liability for its own actions or successor liability for the actions of Dominion, and CCA is entitled to summary judgment, as a matter of law.

Respectfully submitted this 10th day of September, 2008.

FORD & HARRISON LLP

*s/ Peter F. Munger*
Peter F. Munger (#12438)
Colleen M. Rea (#24960)
John C. Lowrie (#31379)
1675 Broadway, Suite 2150
Denver, CO  80202
Telephone:  (303) 592-8860
Fax:  (303) 592-8861
pmunger@fordharrison.com
crea@fordharrison.com
jlowrie@fordharrison.com

Counsel for Defendant CCA

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on September 10, 2008, I electronically filed the foregoing **CCA'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following addressee(s):

Diana Chen, Esq.
Sally Shanley, Esq.
EEOC
3300 North Central Avenue, Suite 690
Phoenix, AZ 85102
E-mail: diana.chen@eeoc.gov.
E-mail: sally.shanley@eeoc.gov

Barry Roseman, Esq.
McNamara, Roseman, Martinez & Kazmierski, LLP
1640 East 18th Avenue
Denver, CO 80218
bdr@18thavelaw.com

Daniel R. Satriana, Jr., Esq.
April Jones, Esq.
CLISHAM, SATRIANA & BISCAN, L.L.C.
1512 Larimer Street, Suite 400
Denver, CO 80202
E-mail: satrianad@csbattorneys.com
E-mail: jonesa@csbattorneys.com

s/ Peter F. Munger
Peter F. Munger
Ford & Harrison LLP
1675 Broadway, Suite 2150
Denver, CO 80202
Telephone: (303) 592-8860
Fax: (303) 592-8861
pmunger@fordharrison.com

Denver:16511.1